THOMAS H. KILLOREN, Appellant, v. CORNELIUS MEEHAN *et al.*, Respondents.

St. Louis Court of Appeals, December 5, 1893.

1. **Building Contract**: DISCHARGE OF SURETY OF CONTRACTOR. When a building contract provides against any material variation from its terms, unless the difference in the contract price resulting from the variation be first agreed upon by the parties in writing, and a material change in the work is agreed upon between the parties but not in writing, the surety of one of them will be discharged from further obligation, if he has not consented thereto.

2. ———: ———. But the surety will not be discharged by a change in the work contracted for, which was rendered necessary solely by the negligence of his principal in the execution of the contract; nor by an independent contract made after the completion and acceptance of the work with respect to which he has bound himself.

3. **Practice, Appellate:** REVERSAL OF ENTIRE JUDGMENT. The plaintiff herein, who was a surety on the bond of a contractor for a building, sued to enforce a mechanics' lien for work done on the building, and recovered judgment. The defendant owner recovered judgment on a counterclaim based on the bond. *Held*, on appeal by the plaintiff, that error in the trial of the counterclaim should work a reversal of both judgments.

*Appeal from the St. Louis City Circuit Court.*—HON. J. A. HARRISON, Judge.

REVERSED AND REMANDED.

*Seneca N. Taylor, Charles Erd* and *Ed. L. Powers* for appellant.

It is not disputed that the owner and contractor could make any addition to, or omission from, the work they might agree upon, or alter or change the contract as they saw fit, without invalidating or rendering it void between themselves; but any such additions or omissions or alterations made without the sureties' consent discharges them from liability. *Warden v. Ryan,* 37 Mo. App. 470; *Fitzgerald v. Beers,* 31 Mo. App. 361; *Beers v. Strimple,* 22 S. W. Rep. 620. The stipulations of the contract, in respect to omissions and additions and changes, fix absolute limitations upon the power of the superintendent and are binding. *Beers v. Strimple,* 22 S. W. Rep. 620; *Hartupee v. Pittsburg,* 97 Pa. St. 107–119; *Ford v. United States,* 17 Court of Claims, 60; *Stewart v. Cambridge,* 125 Mass. 102; *Illinois Deaf and Dumb Institutions v. Platt,* 5 Bradw. (Ill.) 567; *Meiers v. Searl,* 30 C. L. L. J. Q. B. 9; *Russell v. LaDabanderia,* 32 C. L. L. J. C. 68. It

cannot be contended successfully by the respondents that the additions and alterations were of such a trifling character as that the law will not regard them on the maxim *de minimis non curat lex*. It has never been held that a sum equal to $20 would fall within the maxim. Moreover, adding any substantial sum to the obligation discharges the securities. *Picket v. Brecken-ridge*, 22 Pick. 298; *Cherry v. Stephens*, 97 Mass. 83; *Evans v. Fortman*, 30 Mo. 449; *Bank v. Armstrong*, 62 Mo. 59; *Bank v. Fricke*, 75 Mo. 178; *Morrison v. Garth*, 78 Mo. 434; *Hood v. Taubman*, 79 Mo. 101; *Farrar v. Kramer*, 5 Mo. App. 167.

*A. R. Taylor* for respondents.

BIGGS, J.—The defendant Dunn entered into a contract with his codefendants, Meehan and Creagen, for the construction of some buildings to be erected on a lot owned by him. The houses were to be built according to written specifications and plans, and the building contract contained the further stipulation that, if they were not completed at a given time, then Meehan and Creagen should forfeit and pay to Dunn $5 for each day thereafter until their final completion. To secure Dunn in the performance of this contract, Meehan and Creagen gave an indemnifying bond, in which the plaintiff was surety.

The present action is one for work done and materials furnished by the plaintiff as a subcontractor under Meehan and Creagan in the construction of the houses, and for the enforcement of a mechanics' lien against the lot and houses. Dunn alleged in his answer, by way of counterclaim against the plaintiff as surety in the bond, that Meehan and Creagen had failed to complete the houses within the prescribed time, and that, by reason thereof, he (Dunn) was

entitled under the terms of the bond to a judgment against the plaintiff for $550. In reply the plaintiff alleged that there was "a departure from the plans and specifications for the erection of said buildings in question, made at the instance and request of said Thomas Dunn, which departure required the furnishing of other and additional material and labor in the construction of said buildings, amounting in the aggregate to $100 or thereabouts; that the superintendents for said buildings directed. Meehan and Creagen, contractors, to make such changes and alterations and additions without first agreeing in writing, signed by the contractors and said superintendents, as to the cost and expense thereof, and this was in violation of the contract and bond, and discharged the plaintiff as surety on said bond; that he never consented or assented to said changes, nor did he know that such changes, additions and alterations, were being made until after said buildings were completed." The plaintiff as a further defense to the alleged counterclaim averred that, for a consideration, Dunn had agreed with Meehan and Creagen to waive all claims for delay in the completion of the houses.

On the trial the jury returned a verdict in plaintiff's favor for $507.90, and the jury also found that the plaintiff was entitled to the enforcement of his mechanics' lien. Judgment was entered accordingly. The jury also returned a verdict in favor of Dunn on the counterclaim for $500, and the court entered a judgment thereon. It is of this last matter that the plaintiff complains.

The building contract contains this clause: "The superintendent shall be at liberty to make any deviation from, or alteration in the plan, form, construction, detail and execution described by the drawings and specifications without invalidating or rendering void

this contract, and, in case of any difference in the expense, an addition to, or abatement from, the contract price shall be made, and the same shall be determined by the architect; and, in case any such alteration or change shall be made or directed by the said superintendent as aforesaid, in the plans, drawings and construction of the aforesaid buildings, and in case of any omission or addition to said buildings being required by said superintendent, *the cost and expense thereof is to be agreed upon in writing, and such agreement is to be signed by said parties of the second part* (Meehan and Creagen) *and superintendent, before the same is done or before any allowance therefor can be claimed, and, in case of any failure to so agree, the same shall be completed upon the original plan.*"

It was developed by the plaintiff on the cross-examination of W. B. Ittner, one of the architects in charge of the buildings, that the cellar was dug six inches deeper than the plans called for, thereby entailing the additional cost of $32. Concerning this change the witness said: "As I remember, I think that (the change in the depth of the cellar) was more of a necessity than anything else. When we went to lay out the house, we found the ground low; if we had built our house as the plans showed, we would have nothing to rest it on but six inches of air, so that we just dropped our bottom six inches; it was not a change made on Mr. Dunn's request, but it had to be made." The witness also testified that, at the request of Dunn, extra work was done in the bath room, amounting to $8; shelves in the closets, $3; and a partition fence, $7; that there was no written agreement between Meehan and Creagen and the superintendents, providing for any change in the plans or for extra work or the cost thereof; that the plaintiff was not notified of the change or extra work, and that he did not assent to the same.

On the other hand, there was some evidence tending to prove that the change in the depth of the cellar resulted from the negligence of Meehan and Creagen in making the excavation in this, that in doing the work they failed to consult the grades, thereby getting the excavation for the cellar six inches deeper than the plans called for, and that the excavation either had to be refilled or the buildings constructed with the cellars six inches deeper than the plans called for. There was evidence, to the effect that the partition fence was built by Meehan and Creagen without any orders from anyone; and that the agreement for the extra work on the closets and bath rooms was made after the completion and acceptance of the houses, and was independent of the original contract.

The court refused the following instruction, asked by the plaintiff:

"The court instructs the jury that, under the terms of the contract read in evidence, neither the owner nor the superintendents, Foster and Ittner, had any right to make any changes, alterations or additions in the work required to be done, which would increase the cost thereof, without first agreeing in writing as to the value of such additional cost, and said agreement being signed by said superintendents and Meehan and Creagen; and, if the jury believe from the evidence that there was any additional work done by said Meehan and Creagen at the instance and request of the superintendents, which increased the cost of the flats in question, and that there was no agreement entered into in writing between said superintendents on the one side and Meehan and Creagen on the other before said extra work was done, then this would release the plaintiff from any liability on his bond, and the jury should find for the plaintiff and against defendant Dunn upon his counterclaim."

The other members of the court are of opinion that this instruction is defective, in that it ignored the defendant's evidence to the effect that the additional work on the excavation became necessary by the negligence of the contractors, and that for this reason the court was justified in refusing it. If the case had been tried on such a theory, I would readily yield to this view. But the entire record shows that the release of the plaintiff from liability on the bond was resisted upon the *sole* ground that changes might be made in the building without first fixing the cost by written agreement, as the contract provided. For this reason alone the instruction was refused. The instructions given by the court conclusively show this. Hence the suggestion, which is made for the first time in this court, that the instruction is faulty in the manner stated, is an afterthought, and, I think, should not be heeded in a review of the case.

But we are all agreed that the court committed error by giving the defendants' fifth instruction, which reads: "The court instructs the jury that by the terms of the contract and bond read in evidence the fact that alterations or extra work was done by Meehan and Creagen, the contractors on the buildings and improvements, did not impair or render void said bond, nor release or discharge the plaintiff from the obligations of said bond." As all the evidence tended to show that the alterations were made, and that the extra work was performed without any agreement in writing providing therefor, and fixing the price thereof, this instruction was clearly wrong under the recent decision of the supreme court in the case of *Beers v. Strimple,* reported in 22 S. W. Rep. 620. The court was there called upon to construe a similar contract, and the conclusion arrived at was that, before the owner or superintendent of the building was authorized under the

contract to order changes or variations in the work, the cost thereof must be agreed to in writing, signed by the contractor and the superintendent. If it was not so agreed beforehand, and the surety on the bond of the contractor did not assent to the changes, he would be released from his obligation. The court, in passing on the question, said: "This agreement is clear, to the effect that, before there can be any alteration or change in the plans, drawings, or specifications, the cost must be agreed upon by the superintendent, on the one hand, and the parties of the second part on the other. The two sentences, taken together, confer the right to make alterations upon the superintendent, not the plaintiff; but before any alterations are made, the cost must be agreed upon in writing by him and the parties of the second part. This must be the meaning of the contract, taken as a whole, for the proposition is clearly expressed and made prominent in the contract that, before alterations or changes are made, the cost must be agreed upon in writing, signed by the parties of the second part and superintendent. * * * The finding of the referee shows that a number of changes and alterations were made, and that, too, without the knowledge or consent of the sureties. The law is well settled that a surety has the right to stand upon the strict terms of his contract, and if a variation is made without his consent, he is discharged. The principle applies to these building contracts the same as to other contracts."

The other assignments are not well taken. But, in view of a retrial, we deem it proper to suggest that to relieve the plaintiff from his liability on the bond the changes and extra work must have been authorized either by the superintendents or Dunn, and the extra work must have been performed under the original contract. Therefore, if, as a matter of fact, the change

in the depth of the cellar was caused solely by the negligent act of Meehan and Creagen, and the partition fence was built by them without orders from anyone, and the extra work on the bathroom and the closets was performed after the completion and acceptance of the buildings and under another and independent contract between them and Dunn, then the liability of the plaintiff on the bond was in nowise affected.

As the rights of the respective parties must be settled and adjudicated at one and the same time, the error of the court in reference to the trial of the counterclaim must result in vacating the judgment altogether. Therefore, it will be set aside, and the cause remanded. All the judges concur.