THOMAS H. KILLOREN, Respondent, v. CORNELIUS
MEEHAN *et al.*, Defendants; THOMAS
DUNN, Appellant.

### St. Louis Court of Appeals, December 22, 1896.

1. **Instructions.**   Where the same alleged vice in one party's instructions is to be found in the instructions of the other party, the party objecting is in no position to urge his objection.

2. **Improper Remarks of Counsel in Argument to Jury:** CONFLICT IN PROOF.   A reversal will be granted for improper remarks of counsel in his closing argument to the jury, where there is a sharp conflict in the proof on all the material issues, and the court can not say that the jurors have not been influenced or controlled by such remarks.

*Appeal from the St. Louis City Circuit Court.*—HON.
JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*A. R. Taylor* for appellant.

For the sole purpose, as manifest by the record, of getting before the jury the incompetent statement of a witness on the first ‘trial, plaintiff was permitted to place the witness on the stand, and read such statements to him.   This was prejudicial error for which a reversal should be granted.   *Dunn v. Dunnaker*, 87 Mo. 600.

The language used by counsel for plaintiff in his closing argument to the jury was a flagrant abuse of his privilege.   This court has repeatedly condemned such practice.   *Gibson v. Ziebig*, 24 Mo. App. 67; *Carder v. Primm*, 64 *Id.* 96; *Nichols et al. v. Metzger*, 43 Mo. App. 618; *McDonald v. Cash*, 45 *Id.* 79.

The work for extras was clearly no part of the original contract, for the thought of such work first occurred, according to the undisputed evidence, after it was suggested by moving-in tenants. So we submit that it was what the supreme court calls work done under "subsequent independent agreement of the principal to other and different work for the same person," which that court declares will discharge the sureties. *Beers v. Wolff*, 117 Mo. 187.

*Seneca N. Taylor* and *Charles Erd* for respondent.

It was not error to allow plaintiff's counsel to examine Mr. Itner, because counsel for plaintiff was entrapped, misled, and surprised by his testimony, for it was in direct conflict with what he had given counsel to understand it would be. *Dunn v. Dunnaker*, 87 Mo. 600; *Drug Co. v. McMahon*, 50 Mo. App. 24; *State ex rel. v. Martin*, 52 *Id.* 513; *Sclover v. Bryant*, 54 Minn. 434; 1 Whar. on Ev., sec. 549; 1 Greenlf. Ev., sec. 444.

The supreme court will not award a new trial because of alleged improper remarks of counsel, unless there has been manifest abuse of the trial court's discretion, resulting in appellant's injury. *Giddionsen v. R'y*, 129 Mo. 392; *Hoffman v. Hoffman*, 126 *Id.* 486–499; *Olfermann v. Union Depot R'y Co.*, 125 *Id.* 417; *Carter v. Primm*, 64 Mo. App. 96.

Instructions should be taken together, and when so considered, if they declare the law sufficiently favorable to appellant, he can not complain. *Vogeli v. Granite Co.*, 56 Mo. App. 678; *Deweese v. Min. Co.*, 54 *Id.* 484; *Distilling Co. v. Creath*, 45 *Id.* 171; *Wetzel v. Waggoner*, 41 *Id.* 509; *Fugler v. Bothe*, 43 *Id.* 44; *Moore v. Sanborin*, 42 Mo. 490; *McKeon v. R'y*, 43 *Id.* 405; *Henschen v. O'Bannon*, 56 *Id.* 290; *Sewing Machine Co. v. R. R.*, 71 *Id.* 215; *Vinegar Co. v. Gug-*

*genos,* 98 *Id.* 391, 398; *Ridenhour v. R. R.,* 102 *Id.* 288; *Shortel v. St. Joseph,* 104 *Id.* 115; *LeMay v. R'y,* 105 *Id.* 370; *Kleiber v. R'y,* 107 *Id.* 252; *McGrero v. R'y,* 109 *Id.* 590; *Henry v. R'y,* 113 *Id.* 244; *Burdoin v. Town of Trenton,* 116 *Id.* 372.

When, from the whole case, it appears justice has been done, though errors were committed which did not materially affect the merits, the court will not disturb the verdict. *Walter v. Cathcart,* 18 Mo. 256; *Smith v. Culligan,* 74 *Id.* 388; *Drain v. R. R.,* 86 *Id.* 582; *Nicholson v. Golden,* 27 Mo. App. 159; *Manerman v. R'y,* 41 *Id.* 358; *Fitzgerald v. Baker,* 96 Mo. 661; *McGowan v. Ore & Steel Co.,* 109 *Id.* 518; *Henry v. R'y,* 113 *Id.* 538; *Davis v. Belt R'y,* 46 Mo. App. 180; *Walsh v. Exposition,* 101 *Id.* 534; *Fortune v. Fife,* 105 *Id.* 433. See, also, secs. 2302, 2303, R. S. 1889.

Reply of respondent.

It has never been held that a sum equal to $10 would fall within the maxim *de minimis curat lex,* as argued by appellant's counsel. *Pickett v. Breckenridge,* 22 Pick. 298; *Cherry v. Stevens,* 97 Mass. 83; see, also, *Bank v. Armstrong,* 62 Mo. 59; *Bank v. Frick,* 75 *Id.* 178; *Morrison v. Garb,* 78 *Id.* 434; *Hood v. Taubman,* 79 *Id.* 101.

The surety's liability is dependent upon the identical contract being carried out, and any change therein without his consent, whether beneficial or injurious to his principal, discharges him. *Miller v. Stewart,* 9 Wheat. 702; *Blair v. Ins. Co.,* 10 Mo. 566; *Taylor v. Jeter,* 23 *Id.* 244; *Nofsinger v. Hartner,* 84 *Id.* 552; *Bauer v. Cabanne,* 105 *Id.* 118; *Warden v. Ryan,* 37 Mo. App. 466; *Witcher v. Hall,* 5 Barn. & Cress. 269; *Ryan v. Mortan,* 65 Tex. 258.

BIGGS, J.—This is the second appeal in this case (55 Mo. App. 427). The reported opinion contains a full statement of all the facts. The action is against the defendants Meehan and Creagan for work done and materials furnished by plaintiff in the construction of some flats belonging to the defendant Dunn. Meehan and Creagan had the contract with Dunn for the construction of the buildings, and the plaintiff was a subcontractor under them. The plaintiff also sought to enforce his mechanic's lien against the buildings. Meehan and Creagan made no defense. Dunn did not dispute the plaintiff's debt or the regularity of the lien. He set up a counterclaim against the plaintiff as surety on the builders' bond of Meehan and Creagan. The conditions of the bond were that Meehan and Creagan would fully perform their contract with Dunn. In support of the counterclaim he averred in his answer that the buildings were not completed within the time prescribed in his contract with Meehan and Creagan, and that by its terms he was to be compensated for the delay at the rate of $5 per day, and that the work had been delayed one hundred days.

The plaintiff in his reply admitted the execution of the bond, and he made no attempt to controvert Dunn's evidence as to the delay in the completion of the work. In discharge of his liability on the bond he averred that there was a departure from the original plans and specifications, which required the furnishing of other additional materials and labor of the value of $100 in the construction of the buildings; that the architect or superintendent of the buildings directed Meehan and Creagan to make such additions without any agreement or writing as to their cost; that this was in violation of the building contract and that by reason whereof the plaintiff as surety on the bond was discharged.

On the first appeal we reversed the judgment for error in the defendant's instructions. Concerning the alleged additions to the work we decided that if ''the change in the depth of the cellar was caused solely by the negligent act of Meehan and Creagan, and the partition fence was built by them without orders from anyone, and the extra work on the bath rooms and the closets was performed after the completion and acceptance of the buildings and under another and independent contract between them and Dunn, then the liability of the plaintiff on the bond was in nowise affected.'' On the retrial of the case the evidence on both sides was directed mainly to these issues. There was a verdict for the plaintiff as to the debt and lien and against Dunn on his counterclaim. Judgment was entered accordingly. Dunn alone has appealed. He complains of the admission of evidence, the improper remarks of plaintiff's counsel in his argument to the jury, and of plaintiff's instructions.

The same alleged vice in plaintiff's instruction, of which complaint is made, is to be found in one given at the instance of the defendant. The latter is therefore in no position to urge his objection.

INSTRUCTIONS.

As we have concluded that the judgment ought to be reversed by reason of improper remarks by plaintiff's counsel in the closing argument to the jury, we need not discuss the assignment as to the evidence, the matter complained of being a mere accident of the trial.

The plaintiff's counsel had the closing argument to the jury. He said: ''The court tells you if the extra work was not occasioned by the act of Meehan and Creagan, but was occasioned by the plans, the architect not estimating the proper lay of the land, Mr. Killoren as surety is no longer bound. I am not to stand here

IMPROPER remarks of counsel in argument to jury: conflict in proof.

and make faces at Mr. Dunn and say he is a *pawnbroker* or anything else." Dunn's counsel objected and excepted to the use of the language. The court said: "There is no evidence of this kind." Counsel for Dunn said: "I ask the court to rebuke him." The court took no notice of this request. Counsel for plaintiff continuing his argument, said: "It does not make any difference who the man is, the law is the same. I have not said that Mr. Killoren is a *plumber*. I have not stood here and said because Mr. Dunn is a *sleek-looking capitalist* that you should find this or that. I do not argue cases that way. It is not necessary that I stand here and make grimaces when I argue a case or when the other counsel is arguing the case."

It is conceded that the intimation that Dunn was a "pawnbroker" and "a capitalist" was not warranted by any evidence in the case. Under the issues no such evidence could possibly have become pertinent. If plaintiff's counsel, in the examination of witnesses, had propounded a question with the view of eliciting either fact, it would have been the duty of the court not only to interpose and prevent the question from being answered, but also to administer a rebuke to counsel for asking it. As it is, the conduct complained of is far more reprehensible. Plaintiff's counsel was making the final argument to the jury, and his reference to Dunn as "a pawnbroker" and "a sleek-looking capitalist" very probably had a tendency to create a prejudice against him in the minds of some, if not all, of the jurors. It is well known that there is a general prejudice against pawnbrokers. They are regarded by many people as usurers and extortioners, and in legal contests between them and the ordinary citizen the average juror's sympathies are always with the latter. Hence the insinuation that Dunn was a pawnbroker and a well fed capitalist, when coupled with the reminder

that Killoren was a mechanic, undoubtedly had a strong tendency to arouse in the minds of at least some of the jurors a feeling of resentment against Dunn. The high standing of plaintiff's attorney warrants us in saying that no such result was intended by him. He was engaged in a heated argument, and had no time or was not in proper condition of mind to weigh his words, but he certainly knew that his statements were outside of the evidence, and he also knew that in pursuing such a course he assumed for his client the risk of having the court decide that his remarks were prejudicial to the other side. Counsel for Dunn pursued the only course open to him, and that was to object and ask that plaintiff's attorney be rebuked. This the court failed to do. Its remark that there was no evidence to support the statements did not meet the exigencies of the case. A rebuke should have been administered, and so strongly that the minds of the jurors would have been impressed with the fact that in passing on the issues, it was their sworn duty to put aside such considerations as the statements of counsel suggested.

If we could say that under the evidence the judgment was for the right party we might affirm it, notwithstanding the improper conduct of plaintiff's counsel. But there was a sharp and decided conflict in the proof bearing on all of the material issues and therefore we can not say that the jurors were not controlled or influenced by the objectionable statements.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.