# THE STATE v. ERNEST BURNS, Appellant.

### Division Two, March 7, 1921.

1. **TRIAL: Right of Accused.** A defendant in a criminal case is presumed to be innocent until proven guilty, and is entitled to· such presumption throughout the case; and the duty devolves upon the trial court and prosecuting attorney to see to it that he is granted a fair and impartial trial upon the merits of the controversy.

2. ———: **Improper Evidence: Unfairness of Prosecuting Attorney.** A persistent attempt by the prosecuting attorney, in spite of adverse rulings by the judge, to get before the jury evidence which the Supreme Court on a former appeal in the same case had held improper, in order to create in the minds of the jury the unwarranted impression that defendant had maintained improper relations with the wife of deceased, when there was no evidence at all that such was the fact, is a denial to defendant of a fair and impartial trial; and the attempt to create this unwarranted impression being aggravated by an impassioned argument to the jury, wherein, without any evidence to support it, either as provocation or otherwise, defendant's conduct in destroying the sanctity of deceased's home was dwelt upon at great length, was reversible error.

3. ———: **Unfair Argument.** An argument to the jury by the hired counsel for the State, wherein he urges the jury to convict defendant on the ground that he had polluted the sanctity of deceased's home, when there is no evidence to support the accusation, is an invasion of the presumption of innocence, and should be summarily stopped by the court; and if, upon objection, counsel is only feebly rebuked or not rebuked at all, there is no way to cure the wrong except to grant a new trial.

4. **EVIDENCE: Carrying Pistol: U. S. Mail Carrier.** Where the evidence is not clear whether deceased or defendant was the aggressor, and there is evidence that, when deceased appeared on the porch of the postoffice with a pistol in his hand, defendant took a pistol from his automobile in which he carried the mail, defendant, being a mail carrier, should be permitted to show that he was carrying the pistol under the requiremennts of the Government.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*McKap & Medling* and *Ward & Reeves* for appellant.

(1) The court erred in refusing to rebuke the prosecuting attorney for continuously asking questions that this court had held was reversible error in the former trial. State v. Burns, 213 S. W. 116. (2) The court erred in refusing to rebuke J. S. Gossom, hired counsel for State, for an unwarranted attack upon defendant and statements out of the record in his closing argument to the jury. State v. Davis, 217 S. W. 91; State v. Dozier, 177 S. W. 360; State v. Spivey, 191 Mo. 112; State v. Reppley, 213 S. W. 480. (3) The court erred in refusing to permit the defendant to show why he had a pistol on the occasion in question.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for respondent.

(1) Error cannot be predicated upon sustained objections. State v. Miles, 199 Mo. 560; State v. Grant, 144 Mo. 65; State v. Brown, 181 Mo. 213; State v. Burns, 278 Mo. 446. (2) The trial court properly excluded the evidence offered by appellant tending to show why he carried a pistol. State v. Ruck, 194 Mo. 434. (3) It is within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence. 16 C. J. sec. 2240; State v. Dyer, 139 Mo. 212; State v. Musick, 101 Mo. 274; State v. Johns, 124 Mo. 386; State v. Harrison, 263 Mo. 659.

RAILEY, C.—This case was here upon a former appeal and was reversed and remanded on account of errors committed during the progress of the trial. It

will be found reported in 278 Mo. 441, 213 S. W. 115.
The facts relating to the homicide are not materially dif-
ferent from what they were in the former trial.

The evidence on behalf of the State, briefly stated,
tends to show, in substance, that A. P. Bumpas lived
at the town of Cooter, in Pemiscot County, Missouri;
that his wife was in charge of the post office in said
town, and that, with his wife and two children, they
lived in the building occupied as a post office; that de-
fendant, on September 27, 1917, the day of the homicide,
and prior thereto, was a mail carrier between the towns
of Steele, Cooter and Tyler; that, on said date, defend-
ant and deceased were not on friendly terms; that in
the usual course of business in carrying the mail, de-
fendant usually remained at Cooter about one hour;
that, on said 27th day of September, 1917, defendant had
been at the post office about one hour waiting for the
mail to be made up; that during that time, the deceased,
A. P. Bumpas, had been out in his back yard, and came
into the house about the time defendant was starting
out to his Ford car, in which he carried the mail, with
a mail sack in each hand; deceased followed him out
on the porch, cursed him, told him to get out of there
and quit hanging around his family, etc. Some evidence
on the part of the State tended to show that, at this time,
defendant also had a pistol in one hand with the mail
sack. Defendant's evidence tends to show that he had
no pistol at that time, and that his pistol was in the
car. At any rate, defendant went on the opposite side
of said car from deceased, and was putting the mail
sacks in the car. Defendant testified that deceased had
a pistol when they came out on the porch, with deceased
following behind. There is some evidence of the State
contradicting this, and tending to show that deceased
did not go into the house and get his pistol until the
first shot had been fired by defendant, while behind his
car, with a small pistol. The evidence is clear that de-
fendant fired the first shot. He testified that in getting
his pistol it went off accidentally, and that he did not

shoot at deceased. Several witnesses for the State testified that defendant fired this shot, but they did not say he fired at deceased. The evidence tends to show that deceased then had a pistol in his hand, or ran in immediately after this first shot, got his pistol, returned to the door and shot at defendant. The latter then shot twice at deceased, one shot taking effect, from which he soon died.

The jury found defendant guilty, and assessed his punishment at ten years in the penitentiary. Defendant, in due time, filed motions for a new trial and in arrest of judgment, both of which were overruled, and the cause was duly appealed by him to this court.

The defendant objected to all the instructions given by the court, and excepted to the action of the court in refusing to give those asked by him.

The instructions given and refused, as well as the other matters complained of by defendant, will be considered, as far as necessary, in the opinion.

I. Appellant complains of the action of the trial court in refusing to rebuke the prosecuting attorney, for knowingly and intentionally bringing before the jury evidence which this court in the former appeal held was improper, for the purpose of creating, in **Unfair Questions.** the minds of the jurors trying the case, the impression that defendant had been too intimate with the wife of deceased and had broken up the home of the latter, when no such issue was presented in the case, nor was there any evidence in the cause which warranted any such insinuation.

In disposing of the case upon the former appeal (213 S. W. l. c. 116), we said:

"When the witnesses arrived, they found Bumpas on the floor. Mrs. Bumpas refused to allow him to be put on the bed. It was shown, over the objection and exception of the defendant, that she said he should not be put on her bed; a man that would act like he had. If he would explain to the crowd why he had done that, and he was justified, she would let him be put on the bed; but she would not if he did not. . . .

State v. Burns.

"I. Error is assigned to the admission by the court of the statement of Mrs. Bumpas explaining why she refused 'to let her wounded husband be put on her bed. This statement was clearly hearsay. While the matter of the statement tended to exculpate the defendant and put the blame of the encounter upon her husband, it further tended to show her partiality for the defendant, and would undoubtedly have a tendency to prejudice the jury against him. Mrs. Bumpas was not a witness, and it was not admissible for the purpose of showing her bias in the case. It was not *res gestae,* and incompetent on any theory. . . . The statements of Mrs. Bumpas occurred several minutes after her husband was shot and after the neighbors had come in. It was her deliberate explanation of her attitude in the matter. It was, in fact, an argument showing why she did not want her wounded husband placed on her bed."

The defendant was outside the building and was not present when the above conversation occurred. She was evidently smarting under the insinuation cast upon her character by the husband, when he said to defendant, as told by Travis: "From now on, you bring the mail and come and get your mail and go about your business, and don't be hanging about my family."

When the case came up for trial, after the former reversal, the mandate and opinion of this court were on file in the circuit court. It is fair to assume that in the re-trial of the case the judge of the court, the prosecuting attorney and the counsel upon both sides must have been familiar with the language of this court, heretofore quoted, in respect to the above testimony. In utter disregard of our former ruling, the prosecuting attorney, examined Oscar Kearney, a witness for the State, and the following occurred:

"A. We carried Mr. Bumpas in the other room.

"Q. Then what did you do? A. Well, I don't know that we did anything; only tried to administer to him right then and get a doctor, and then I went back to the Supply Store.

"Q.  Where did you put him?  A.  On the floor—

"Mr. Ward:  I object, wholly immaterial and wouldn't bind the defendant.

"The Court:  Sustain the objection.

"Mr. Bragg:  Right immediately after this was done, just showing their actions—

"The Court:  If you gentlemen want to reverse this case, let's quit trying it right now.

"Q.  Did you see his wife there?  A.  Yes, sir.

"Q.  Did you have any conversation with his wife?

"Mr. Ward:  I object to that, wouldn't bind the defendant, any conversation between this witness and the deceased's wife.

"The Court:  Sustained.  ·

"Q.  Ask you whether or not his wife at the time refused to let you put him on a bed?

"Mr. Ward:  I object, and ask that counsel for the State be rebuked for asking that kind of a question.

"The Court:  I'll sustain the objection.

"Q.  How long was that after the shooting?

"Mr. Ward:  We except to the Court refusing to rebuke counsel.

"The Court:  The Court will permit you to go ahead and rebuke him right away; is there anything further?

"The Court:  Mr. Bragg, the Court has told you and has said two or three times that isn't competent and the Court now admonishes you not to take up my time in asking questions which the Supreme Court has expressly held as not being competent and—for two reasons, one is, we want to respect the ruling of the Supreme Court, which is the law in this case, and the other is we don't want to waste our time by unnecessary questions where objections would be made and the Court would have to sustain them."

Mrs. Bumpas was not a witness in the case. The question as to whether defendant had ever had any improper relations with the wife of deceased was not an issue in the case, and could not, on the record before us,

have been made an issue herein. There is no evidence in the record tending to show any such relation. The defendant was presumed to be innocent of any crime, until proven guilty, and he was entitled to this presumtion throughout the trial of the case. He was entitled to a fair and impartial trial under the Constitution and laws of this State. The duty devolved upon the trial court, and prosecuting attorney, of seeing that he was granted a fair and impartial trial, upon the merits of the controversy. Did they perform that duty as required by law?

We are driven to the inevitable conclusion, from reading the record herein, that the prosecuting attorney proceeded, in respect to the above matter, in utter disregard and contempt of our former ruling; that he deliberately and intentionally sought to get before the jury the improper evidence aforesaid, in order to create in the minds of the jurors the unwarranted impression that defendant had sustained improper relations with the wife of deceased, and that he had desecrated the home of the latter, etc. It is true, that the prosecuting attorney did not receive any answer to the questions propounded. It is manifest that he did not expect the court to permit the witness to answer these questions. He knew, however, that such an inquiry was improper, and condemned by this court. He evidently knew, regardless of the mild rulings of the court, the questions prepounded would indicate to the jury that defendant and the wife of deceased sustained some sort of improper relation with each other, even if overruled. This conclusion is irresistible, when we come to consider the astounding speech, afterwards delivered along the same line, by Judge Gossom, in the closing argument for the State, where he dwelt at great length upon the alleged conduct of defendant in destroying the sanctity of deceased's home, without any evidence to support said contention, and without any such issue being lodged in the case. The trial court has a good deal of latitude in dealing with this subject, but in cases like the one before

us, where the attorneys for the State deliberately over-
step the rules of propriety, ignore the positive rulings
of this court, and attempt to get before the jury mat-
ters which they know are improper, for the undoubted
purpose of creating in the minds of the jurors an un-
warranted prejudice against defendant, in a close case
like this, the ends of justice require, that a new trial
should be granted defendant, although the court below
may have formally sustained an objection to the prof-
fered evidence. [Levels v. Railroad Co., 196 Mo. l. c.
623-4; Wojtylak v. Coal Company, 188 Mo. l. c. 286-7;
State v. Jackson, 95 Mo. l. c. 652-3; Ephland v. Ry. Co.,
57 Mo. App. l. c. 162-3; Beck v. Railroad, 129 Mo. App.
7; Gore v. Brockman, 138 Mo. App. l. c. 235, and cases
cited; Trent v. Printing Co., 141 Mo. App. 437; Moore
v. Doerr, 199 Mo. App. 428, 203 S. W. l. c. 673; Jackman
v. Ry. Co., 206 S. W. l. c. 246-7; Collier v. City of Shelby-
ville, 219 S. W. l. c. 714; Rudiger v. Ry. Co., 77 N. W.
(Wis.) l. c. 171-2; Stratton v. Nye, 63 N. W. l. c. 929;
Martin v. State, 63 Miss. l. c. 507; Cross v. State, 68
Ala. 476; State v. Smith, 75 N. C. l. c. 307-8; Rudolph v.
Landwerlen, 92 Ind. 34-5; Magoon v. Ry. Co., 31 Atl.
(Vt.) 156; Tucker v. Henniker, 41 N. H. l. c. 322.]

The defendant was not charged in the information
with having destroyed the sanctity of deceased's home,
and an allegation of that character should have been
stricken out if inserted therein, because it had no place
in the case. Appellant was charged with murder, and
he defended upon the ground of self-defense. We have
had before us cases where the husband killed the alleged
destroyer of his home, and evidence of the relationship
between the wife and deceased was sometimes admitted
in evidence to show the great provocation and mental
strain which was operating upon the mind of defendant
when the killing occurred, etc. No such question, how-
ever, is presented in the record of this case. There is
not the slightest evidence before us, which indicates that
Mrs. Bumpas was not a virtuous woman nor that de-
fendant had ever sustained any improper relations with

her.. The evidence of defendant is clear and explicit
that no such relation existed.

In a close case of this character, where it is hard
to determine from the record who was the aggressor,
the poison injected into the minds of the jurors by the
grossly improper conduct of the State's attorneys, in
attempting to have the defendant tried for polluting the
home of deceased, instead of trying him for murder,
must to some extent, have operated upon the minds of
the jurors to the prejudice of defendant. We are of
the opinion that no conviction ought to be permitted to
stand based upon such conduct as that which character-
ized the unfair trial of defendant in this cause.

II.  Appellant contends that "The court erred in
refusing to rebuke J. S. Gossom, hired counsel for State,
for his unwarranted attack upon defendant and state-
ments out of the record in his closing argument to the
jury."

We have carefully read four or five pages of Mr.
Gossom's alleged closing argument to the jury, and find
but little said therein with respect to the merits of the
case as presented in the pleadings, but prac-
tically his entire stump speech, as far as re-
ported, is an attack upon defendant's char-
acter—which was shown to have been good—and an
appeal to the jury to convict defendant on the ground
that he had polluted the sanctity of deceased's home,
etc.  Among other things, the following occurred:

"MR. GOSSOM: . . . but just as long as men
invade the homes of men, just so long you will be brought
into the court room to try cases like this—

"MR. WARD: I object to him saying 'as long as men
invade the homes of men,' because there isn't any testi-
mony to that effect in this case. . . .

"THE COURT: Proceed with the argument of the
evidence and the law.

"MR. WARD: Note exception."

Unfair
Argument.

The court was then asked to rebuke counsel for above statement, because there was no evidence on which to base it.

"THE COURT: Wait a moment, I suppose, gentlemen, you don't know much more about hell than I do, do you, that's just his argument, he can argue about Heaven and hell or around all he wants to.

"MR. WARD: Exception."

Again, Mr. Gossom, in dramatically describing what occurred at the time of the shooting, said:

"Aut (Bumpas) ran back in the house after his gun to protect that woman and his sweet babies, those little babies that he shall never see again, those little children he was trying to raise up in purity and sanctity and educate them—"

"MR. WARD: Your Honor, I am going to object here; no evidence that he was trying to raise his children up in purity and sanctity and educate them—"

"THE COURT: You must confine yourself to the testimony.

"MR. WARD: I except to the Court in not rebuking him."

In continuing this alleged argument, the following occurred:

"MR. GOSSOM: I have to uphold the strong arm of the law, who is going to protect your home—my sweet little woman, I will not turn him loose on the community but to the contrary I have upheld the law, I have brought in a verdict of guilty; what are you going to do about it, men? Why, this is the Commonwealth that you are a part of. This is the State of Missouri prosecuting a man for killing one peaceable citizen and without the juries standing up in these matters, the whole thing falls to the ground like a leafless bud—mere chaff. When these facts that might some time come home to you, in your home, how long would it be, do you know? Are you men of children, are you men of families, have you a wife? I appeal to you in the name of Sweet Love, Oh, I beg you gentlemen to uphold the law in this case and

let's stop this, you, who are daddies, you men who have wives and children, go into the jury box and by your verdict uphold the laws of sanctity and purity of the home of every member of this Commonwealth of ours, including your own—

"MR. WARD: I object, and ask the Court to rebuke him for making this remark 'to uphold the sanctity and purity of the home.'

"THE COURT: Argue just the testimony adduced, the jury knows what it was.

"MR. WARD: I except to the Court in not rebuking him."

Such a speech, in the closing argument before a jury, in respect to matters not in evidence, or within the issues of the case, was a travesty upon the law. Instead of the trial judge rebuking counsel for going outside the record to appeal to the prejudices of the jury, and stopping him summarily from pursuing said course, he practically acquiesced, in most of what was said, and nowhere in the record do we find that he even made a feeble attempt to rebuke counsel, for such an uncalled for tirade of abuse and appeal to the jury on matters outside the case. The constitutional right of defendant, to a fair and impartial trial before the jury, was ruthlessly striken down, by an advocate purporting to represent the great State of Missouri. The presumption of innocence that should follow defendant until found guilty was completely ignored by both counsel and court. The latter permitted said counsel, in the closing argument of the case to try defendant, without evidence to support it, on the theory that he had invaded the sanctity of deceased's home and had sustained improper relations with his wife, instead of confining himself to the charge of homicide, as alleged in the information. Under the law, as declared in numerous decisions of this State, defendant, by reason of the foregoing, is entitled to a new trial in this cause. [State v. Young, 99 Mo. 682-3; Haynes v. Town of Trenton, 108 Mo. l. c. 133-4; Evans v. Trenton, 112 Mo. l. c. 405, and cases cited;

Williams v. Ry. Co., 123 Mo. l. c. 586; State v. Fischer, 124 Mo. 464-5; State v. Harvey, 131 Mo. 339, and cases cited; Wojtylak v. Coal Co., 188 Mo. l. c. 285-6; State v. Spivey, 191 Mo. 87-8; Levels v. Railroad, 196 Mo. l. c. 623-4; State v. McGrath, 228 Mo. 413; State v. Dozier, 177 S. W. l. c. 361; State v. Reppley, 213 S. W. l. c. 480-1; State v. Davis, 217 S. W. l. c. 91-2; Collier v. City of Shelbyville, 219 S. W. 714; Jackman v. Railroad, 206 S. W. l. c. 246; Moore v. Doerr, 199 Mo. App. 428, 203 S. W. l. c. 673; O'Hara v. Lamb Const. Co., 197 S. W. 163; Trent v. Printing Co., 141 Mo. App. 437; Tuck v. Traction Co., 140 Mo App. 342; Beck v. Railroad, 129 Mo. App. 7, and following; Massengale v. Rice, 94 Mo. App. 430; Thompson v. Bernays, 85 Mo. App. 575; Killoren v. Dunn, 68 Mo. App. 212; Ensor v. Smith, 57 Mo. App. 584; Smith v. W. U. Tel. Co., 55 Mo. App. 626.]

The foregoing authorities leave no room for doubt, as to what should be done under the circumstances of this case. The conduct of the State's attorneys was well calculated to prejudice the jury against defendant, and there was no way to successfully eradicate the unwarranted poison, deliberately brought into the case for an illegitimate purpose, except to grant defendant a new trial.

III. Appellant contends that the trial court erred in refusing to permit him to prove that he was carrying the pistol, with which he shot deceased, under the re-

Concealed quirements of the United States Government
Weapon. relating to mail carriers.

If such a rule was in existence at the time of the difficulty in question, and the jury should believe from the evidence that defendant's pistol was in the car, and not on his person, when the trouble commenced immediately before the shooting, it was a circumstance to be considered by the jury in determining whether defendant armed himself on that occasion in anticipation of trouble with deceased, or whether he had the pistol at that time where he usually carried it, in his car to

protect the mail. The jury also had the right to consider the above facts, in passing upon the question as to who was the aggressor at the commencement of the difficulty.

The ruling in State v. Ruck, 194 Mo. l. c. 434, cited by the State, is not in conflict with the foregoing conclusions, as the facts and circumstances in the Ruck case were unlike those at bar.

We are of the opinion that in a re-trial of the case, the defendant should be permitted to prove, if he can, that the pistol with which he shot deceased was in his possession on the day of the homicide, under a governmental requirement, and not for the purpose of having trouble with deceased.

IV. Some other questions are raised by appellant in this case, which were fully considered on the former **Former** appeal. We see no reason for departing from **Opinion.** the conclusions there reached.

On account of the errors heretofore committed, the judgment below is reversed and the cause remanded for a new trial. *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.