MILTON PETTIT, BY NEXT FRIEND, MARTHA M. PETTIT, RESPONDENT, v. GOETZ SALES COMPANY, APPELLANT.*

Kansas City Court of Appeals. December 7, 1926.

*Corpus Juris-Cyc References: Juries, 35CJ, p. 387, n. 34; p. 394, n. 34, 44; Motor Vehicles, 42CJ, p. 1182, n. 59; p. 1277, n. 16.

*Schultz & Owen* and *Mytton & Parkinson* for respondent.

*Culver, Phillip & Voorhees* for appellant.

ARNOLD, J.—This is an action in damages for personal injury alleged to have been caused by the negligence of a servant of defendant in the operation of an automobile truck. Plaintiff was twenty years old at the time of the accident and within two weeks of being twenty-one years of age at the time of the trial.

The record discloses that the accident occurred about six o'clock P. M., November 3, 1923, at the intersection of Calhoun and Twenty-fifth streets in the city of St. Joseph and that it was dark at that hour. Calhoun street runs east and west and intersects Twenty-fifth street at right angles. Plaintiff was employed by a dairyman in delivering milk to his customers and at the time of the accident he had completed his daily task and was on his way home, riding a bicycle. He was proceeding south on the west side of Twenty-fifth street, approaching Calhoun street from the north. Defendant's automobile had entered Twenty-fifth street one block south of Calhoun street and according to plaintiff's evidence, was proceeding north on the west side of said street and about six feet from the west curb thereof. But defendant's evidence is that the car was in its proper position on the east side of Twenty-fifth street, said street at this point being thirty to thirty-three feet in width from curb to curb. The headlights on the car were burning. The accident occurred as the automobile was being turned west into Calhoun street.

Plaintiff testified that he first saw defendant's automobile when he was at, or near, the north line of Calhoun street and about five or six feet east of the west curb line of Twenty-fifth street; that the automobile was being operated at a speed of twenty to thirty miles per hour; that when he first saw the car it was about three times as far south of the south line of Calhoun street as he was north of said line; that when he first saw the car it was headed directly toward him, traveling north; that he did not change his course in the slightest until the car was within about two feet of him, when the car suddenly turned toward the west; that the two vehicles came together near the south line of the intersection, resulting in damage to plaintiff's bicycle and injuries to himself. He stated he was taken to his home by a friend in another automobile.

The evidence shows that the automobile in question was being driven by an employee of defendant, and that the driver was seated on the left side of the car and there was a helper with him, seated on his right. Testimony in defendant's behalf is to the effect that the driver of the automobile did not see plaintiff approaching and was

only aware of his presence on feeling the effect of the compact; that the helper saw plaintiff only when the latter was within two feet of the truck and that he called to the driver, but it was then too late to avoid the collision. The testimony shows that the bicycle and automobile collided at the right front fender of the latter, and that there was no warning or signal given of the intention of the driver of the truck to turn west into Calhoun street. In explanation of his failure to stop, plaintiff testified he thought the driver of the truck intended turning east into Calhoun street or that he would change his course and swing over to the east side of Twenty-fifth street; that the driver did not sound a horn or give any other warning signal.

The petition charges ownership of the automobile in defendant and that it was being operated by defendant's agent while in the line of duty.

An ordinance of the city of St. Joseph, to-wit, No. 2022, approved August 7, 1922, was pleaded and is to the effect that all motor vehicles when in operation shall be driven as near the right-hand side of the highway as practicable; and that the operator of any motor vehicle approaching an intersecting street and turning to the left shall run beyond the center of such intersection, passing to the right thereof, before turning such vehicle to the left. The negligence charge is that (1) the automobile was driven at a high and dangerous rate of speed; (2) that it failed to be kept to the right side of the street; that (3) said vehicle turned around the southwest corner of the intersection and to the left of the center thereof, without sounding a horn or giving any signal of its approach at, or near, the intersection, all in violation of the pleaded ordinance of the city of St. Joseph; (4) that defendant's driver negligently and suddenly turned said automobile to the left across said intersection at such an angle as to block plaintiff's passage, thereby causing the collision.

The petition also pleads a violation of the humanitarian, or last clear chance, rule as follows: ". . . that defendant through its agent at all times knew, or by the exercise of ordinary care could have known, that plaintiff was in a position of peril and that he was oblivious of the same, in time, by the exercise or ordinary care, to have avoided the said accident, and negligently failed to do so," and that plaintiff, at all times, was in the exercise or ordinary care.

The injuries alleged are "that plaintiff's head, back, body, arms and limbs were cut, bruised, contused, wrenched, torn, sprained, and the muscles, ligaments, arteries, veins, nerves, tendons and tissues were strained and injured; that his left shoulder, left arm and limb, also his right leg, right knee and knee cap were wrenched,

contused and sprained, and the bones of the same were injured; that his entire nervous system was also injured, and he was injured internally; that all of said injuries, so carelessly and negligently inflicted, as aforesaid, plaintiff has suffered, and will hereafter suffer great bodily pain and mental anguish; that his ability to earn a livelihood has been impaired and decreased . . ."

The answer of defendant, after admitting its corporate existence, is a general denial of all other allegations in the petition.

Upon the pleadings thus made the cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $5000. Motions for new trial and in arrest were unavailing and defendant appeals.

In support of the appeal, it is first charged that the court erred in permitting plaintiff's counsel to ask improper and, prejudicial questions on the *voir dire* examination of the jury. This charge is based upon the following occurrence, during the interrogation of the panel of eighteen jurors as to their qualifications:

"Mr. Shultz: Are any of you or members of your family stockholders, bondholders or employees in the Casualty Reciprocal Exchange Insurance Company? The name of the company is the Casualty Reciprocal Exchange. I substitute that in the question instead of the way I read it to you before—Are any of you stockholders, bondholders or members of your family employed by the Reciprocal Exchange, a corporation?

"Mr. Voorhees: The defendant objects to this question and other questions which immediately precede along this line because it is prejudicial and asked for the sole purpose of prejudicing the jury. The attorney for defendant informed the plaintiff's counsel, who was examining the jury, as to the name of the Casualty Reciprocal Exchange before he began to examine the jurors. He added the name of 'Insurance Company' to that. His whole line of examination about the insurance company has been improper and prejudicial and defendant asked that the jury be discharged because of these improper questions.

"The Court: The objection is sustained as to the form of the question. Counsel should ask whether any member of the jury is connected in any way with the Casualty Reciprocal Exchange and not refer to it as a corporation or insurance company. The motion to discharge the jury is overruled.

"To which ruling of the court defendant at the time excepted.

"Mr. Voorhees: This ruling of the court and defendant's objection have both been made out of the hearing of the jury.

"Mr. Shultz: I withdraw from my question in reference to the Casualty Reciprocal Exchange as to whether or not it is a corporation. I don't know whether it is a corporation or not, but its name is

Casualty Reciprocal Exchange and my question is whether any of you are stockholders or bondholders or employed by this company?

"MR. VOORHEES: I object to that question and the remarks of the counsel in connection with that question. That they are prejudicial and improper and I again ask that the jury be discharged.

"THE COURT: Objection overruled.

"To which ruling of the court defendant at the time excepted.

"MR. VOORHEES: Just before the *voir dire* examination of jurors was begun, Mr. O. E. Shultz, counsel for plaintiff, asked Mr. B. G. Voorhees, counsel for defendant, if there was any liability insurance in this case and Mr. Voorhees replied that the defendant was insured in the Casualty Reciprocal Exchange, an inter-insurance concern, covering a number of companies engaged in similar lines of industry; that it was a concern just as its name indicated, a reciprocal inter-insurance concern.

"MR. SHULTZ: It is agreed by both parties that the above should be made a part of the record in this case."

It is defendant's contention that its motion to discharge the panel should have been sustained, under the ruling in the recent case of Chambers v. Kennedy, 274 S. W. 726, which is the latest utterance of the Supreme Court on this question. In that case during the examination of the panel, one of the jurors was asked if he were interested in any manner, as a stockholder, or otherwise, in the Continental Casualty Company or any other insurance company engaged in issuing policies of insurance to indemnify persons against claims for damages arising on account of personal injuries. The defendant objected and moved to discharge the panel because the question was intended to be prejudicial. The motion was overruled and the Supreme Court, in an opinion by HIGBEE, C., held the refusal of the trial court to discharge the panel on defendant's motion was reversible error. On this point the opinion says, loc. cit. 728:

"It is generally held that counsel have the right to question jurors on their examination for the purpose of showing grounds for challenge for cause and, within reasonable limits, to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge. '. . . And questions are not barred, although directed to matters not in issue, provided they are pertinent and made in good faith.' [35 C. J. 387; State v. Mann, 83 Mo. 589; State v. Miller (Mo. Supp.), 207 S. W. 797; Reich v. State, 94 Tex. Cr. R. 449, 251 S. W. 1072; Benson v. State, 95 Tex. Cr. R. 311, 254 S. W. 793.]"

The court quoted at length from cases therein cited, but that is unnecessary here and we simply call attention to the case. The court further said, loc. cit. 729:

"There is no pretense that some local insurance company was concerned, or that the stockholders or persons insured by such company

were members of the panel. There was no attempt to show good faith in asking the questions as was shown in the Mann, Miller and Reich cases, supra. In such a case as this the possibility of drawing a juror, connected with an insurance company, interested in the defense is so remote that counsel should have shown their good faith before being permitted to poison the minds of the jurors by asking a question of this character.''

Similarly, in the case at bar, the question at issue was whether defendant negligently injured the plaintiff, and not whether defendant carried liability insurance. And whether defendant did, or did not, carry such insurance, would not aid the jury in arriving at a just and impartial verdict. It must be admitted that a trial should be so conducted as to exclude all improper influences. It is also said on page 729 in the Chambers case:

''This case is very close on its facts, and the poison thus injected into the minds of the jurors was highly prejudicial. The court erred in overruling defendant's objection and in not discharging the jury. The only way to right the wrong is to grant the defendant a new trial. [State v. Burns, 286 Mo. 665, 671, 228 S. W. 766, and cases cited.]''

And particularly applicable to the case at bar is the decision of this court in Trent v. Printing Co., 141 Mo. App. 437, 126 S. W. 238, (opinion by JOHNSON, J.) wherein it is said: ''We take cognizance of the universal belief among lawyers of the highly injurious effect on the defense in a personal injury suit of the intimation that the defendant is protected by insurance. It is obvious counsel for plaintiff adroitly managed to impress the jury with the conviction that defendant was insured and was endeavoring to keep the fact out of the case. We cannot regard what he did as otherwise than a bold attempt, successfully executed, to inject a false issue into the minds of the jury. It is just as obvious that the action of the court in suffering counsel to poison the minds of the jury and then in telling the jury that his remarks were withdrawn from their consideration, cannot be regarded as sending a complete antidote after the poison. No doubt counsel counted on having defendant's objections to his questions and remarks sustained and fully appreciated the impotency of such rulings. We hold the court erred in not sustaining the motion of defendant to discharge the jury. There was no other remedy for such virulent poison.''

Plaintiff undertakes to differentiate the case at bar from the Chambers case by stating that in that case, the objectionable question was asked of each juror, while here, the question was asked but once. However, an examination of the Chambers case will disclose that the question was asked of but one of the jurors on *voir dire*, while in the case at bar, it was asked of the entire panel. We cannot see that the fact of the question being put to one or all of the panel would alter

972

the situation. Following the ruling in the Chambers case we hold the action of the trial court in overruling defendant's motion to discharge the panel constitutes reversible error.

Before the objectionable question was asked, plaintiff's counsel had been told that the correct name of the indemnity company was the Casualty Reciprocal Exchange, and yet, in the face of this information, the entire panel was asked: "Are any of you or members of your family stockholders, bondholders or employees in the Casualty Reciprocal Exchange *Insurance Company*?" While the correct name was afterwards substituted by counsel, the fact remained that the panel was advised that a casualty insurance company was behind defendant. The ruling of the court in sustaining the objection of defendant was powerless to correct the false issue which had been injected into the case. The only way to correct the error is to grant defendant a new trial. Of course we do not wish to be understood as holding that in all cases such a question is inadmissible. The propriety of the question must be determined by the facts in each particular case. In other words, as the Chambers case holds, there must be a showing of good faith in asking the question, an element we deem absent in this case.

While plaintiff makes a charge of general negligence in his petition, this charge seems to have been abandoned and the case submitted under the humanitarian rule. Defendant directs a charge of error against plaintiff's instruction No. 1, declaring that a verdict for plaintiff is authorized if the jury believed "that plaintiff was in a place of danger and imminent peril, and that said agent and employee, while operating said truck, saw, or by the exercise of ordinary care could have seen that plaintiff was in a place of danger and imminent peril, if you so find, in time, by the exercise of ordinary care, to have avoided said accident, if you so find, by turning to the right or by stopping or slacking the speed of the same, and failed to do so and was thereby negligent, and that by reason of said failure plaintiff was injured."

Defendant complains that the instruction went too far and authorized a verdict for plaintiff even though the jury also believed "that plaintiff at said time and place did not exercise ordinary care for his own safety in avoiding said collision." It is argued that the jury may have believed from the evidence that plaintiff was not oblivious of his danger, but was fully sensible of it; and also may have believed that after plaintiff was aware of his peril he had ample opportunity to have removed himself from the danger zone to a place of safety before he was hit, and that he did not take advantage of the opportunity, but knowingly and voluntarily continued to drive straight ahead into the approaching automobile.

It may be conceded that it is unnecessary for plaintiff, in all instances, to prove that he was oblivious to danger in order to entitle him to recover under the humanitarian doctrine; that he can recover under that rule even when he is shown to have been aware of his peril, if he proves either that he had no opportunity to retire from the danger zone, or that he became aware of his danger too late for him to do so. It is charged that instruction No. 1 is erroneous because it did not require the jury to find one or the other of these evidentiary elements.

The rule is well established that in cases where the plaintiff relies upon the humanitarian doctrine for recovery, the question of plaintiff's contributory negligence has no legitimate place. The rule proceeds upon the principle of humanity to the end that every person shall exercise ordinary care for the preservation of the life and limb of another, after seeing him in peril or about to become imperiled, when such injury may be averted without injury to others. It is of no consequence what brings on, or continues, the peril. It may be through obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to extricate another, or through his own hardihood or recklessness. Regardless of how the peril was occasioned, the law, out of its regard for human life, makes it the duty of another who sees his peril to exercise ordinary care to prevent his injury or death. Such is the doctrine as expressed by the Supreme Court in Banks v. Morris & Co., 257 S. W. 482, 484. Applying this rule to the facts in the case at bar, we must hold that the instruction complained of was proper. [See, also, Keliny v. Railroad, 101 Mo. 67, 13 S. W. 806.]

Two other points urged by defendant as ground for reversal are alleged prejudicial remarks made by plaintiff's counsel in his closing argument to the jury, and the alleged excessiveness of the verdict. As the case will be retried and neither of these objections may appear again, we need not discuss them here. Because of the error above mentioned, the judgment is reversed and the cause remanded for a new trial.

*Bland, J.*, concurs on account of what was said by the Supreme Court regarding the humanitarian rule in Banks v. Morris & Co., 257 S. W. 482, 484, 485. *Trimble, P. J.*, absent.