STATE OF MISSOURI, Respondent, v. ROBERT FRED ALLEN, Appellant, No. 43125—251 S. W. (2d) 659.

Division One, October 13, 1952.

*Morris A. Shenker* and *Mark M. Hennelly* for appellant.

468

*J. E. Taylor,* Attorney General, and *B. A. Taylor,* Assistant Attorney General, for respondent.

HOLLINGSWORTH, J.—Defendant, upon trial by a jury, was found guilty of manslaughter in the Circuit Court of the City of St. Louis and thereafter, in accordance with the verdict, sentenced to imprisonment in the State Penitentiary for a term of five years for the slaying of Juanita Smith. He has appealed, assigning as error: (1) insufficiency of the evidence to support the offense of which he was convicted; (2) repeated and allegedly successful efforts on the part of counsel for the State, both in his opening statement and in the presentation of the evidence, to place before the jury incompetent and prejudicial evidence and error on the part of the trial court in its refusals to grant a mistrial by reason thereof; (3) the instruction given the jury on circumstantial evidence.

This is the second appeal of this case. On the first trial defendant had been convicted of murder in the second degree. State v. Allen, Mo. Sup., 235 S.W. 2d 294. An extended statement of the evidence is there set forth. The competent evidence admitted at the second trial, with slight and immaterial variations and omissions, closely followed the evidence we held to have been lawfully admitted at the first trial. Hence, reference is made thereto in lieu of again extending it into this opinion. On the first appeal we considered the sufficiency of the competent evidence admitted and held it warranted

submission of the issue of the guilt of defendant; and we so hold on this appeal.

By reference to our opinion on the first appeal, it will be seen that the case was reversed and remanded for new trial on three grounds. One of these was a prejudicial statement of the circuit attorney in his opening statement that "the evidence would show that following his arrest defendant refused to make any statement; that at the police station defendant gave no information; that he wouldn't talk", followed by the introduction into evidence of the testimony of three police officers that "following his arrest defendant refused to make any statement, gave no information". We there said of that statement [660] and the evidence admitted in support thereof: "The law in this state is that silence of the accused when not under arrest, and in circumstances such that only a guilty person would have remained silent, may be shown. After arrest or while in custody the evidence is inadmissible because he is under no duty to speak." Another of the grounds on which the case was remanded was the admission into evidence of a "declaration of Juanita Smith that defendant shot-her and the declaration of Garvenia that defendant shot her". We held that neither of these declarations was shown to be a part of the res gestae or a dying declaration, and that "therefore, as the record in this case is made, both declarations were incompetent under any theory".

Inasmuch as the evidence at the second trial was substantially the same as that produced at the first trial, the rulings made on the first appeal in the instances above stated became the law of the case on the second trial. Yet, in direct contravention of both of the rulings above set forth, the same circuit attorney who tried the case on the first trial repeatedly and persistently sought to and did get before the jury the effect and benefit of the testimony we had held inadmissible. as violative of defendant's constitutional right to a fair trial.

In his opening statement, the circuit attorney, after stating in detail the evidence up to and including the arrest of defendant at his home, then stated: "It will be shown that the defendant was then returned to the Tenth District Station. It will be shown, please, that conversation attempted with the defendant availed nothing." Objection was promptly made, together with a request that the jury be instructed to disregard the statement and for a declaration of mistrial. The trial court denied the motion for mistrial and stated to the jury: "You-will entirely disregard Mr. Dowling's statement that the defendant said nothing. That is out of the case." Thereafter and during the presentation of the State's evidence in chief, the circuit attorney called to the witness stand Police Officer Vaughn. After developing that Vaughn, who had been stationed at defendant's home following discovery by the police of Juanita Smith and Garvenia Allen suffering from gunshot wounds, had immediately arrested defendant

when defendant returned to his home and that Vaughn and other officers had taken defendant to the police station and "booked him", he then asked Vaughn this question and received this answer: "Q. At any time did you talk to Allen and did Allen talk to you? A. I talked to Allen, but he wouldn't make any statements to me." Objection was made, with a request that the jury be instructed to disregard the statement and for a mistrial. The court sustained the objection, admonished the jury to disregard the testimony and overruled the motion for a mistrial. He also stated to counsel, out of the hearing of the jury, that any further reference to defendant's failure to make a statement would result in a mistrial.

Also, in the opening statement, after detailing the evidence aforesaid, the arrest of defendant, the fact that he was taken by police officers into the separate rooms of Juanita Smith and Garvenia Allen at the Homer Phillips Hospital at about ten o'clock the night of the shooting, the circuit attorney stated: "The evidence will show that both Garvenia Allen and Juanita Smith, seeing the defendant, turned over, as the doctors permitted them to do, and stated -.- and identified - -". Prompt objection was made with a request for reprimand of counsel and for declaration of mistrial. The court stated: "Certainly, the objection is well taken to the word 'identified' ". The motion to reprimand and for mistrial was denied.

Thereafter, in presenting the testimony of Police Officer Shepack, the circuit attorney developed that about 8:55, p.m., Shepack and Officer Spindler found Juanita Smith sitting on the street curbing bleeding from her abdomen and took her to the emergency room of the Homer Phillips Hospital. He then asked these questions and received these answers: "Q. Did you stay with her there at that time? A. Yes, I did. Q. What happened later, if anything? A. I questioned her as to who shot her and she said Robert Allen."

Objection was promptly made with a request that the jury be instructed to disregard the testimony and for a mistrial. The court sustained the objection, instructed the jury to disregard the testimony and denied the motion for mistrial.

Not content to let the matter rest there, the circuit attorney continued: "Q. How long after you arrived there with Juanita Smith did you see Allen? A. About 10:20 or 10:30 p.m. Robert Allen was brought into the hospital. Q. Where did you see him? A. I saw him upstairs in the emergency room. Q. Was that the room in which Juanita Smith was? A. Yes. * * * Q. What was done with Allen there in your presence at the hospital? A. He was brought into the emergency room where Juanita Smith was laying- - -

"MR. HENNELLY: .I object to this, your Honor. This is a consistent attempt to get material which is not proper—hearsay, violation of the constitutional rights of the defendant. I ask it be stricken, that counsel be reprimanded and a mistrial be declared.

"MR. DOWLING: I asked what was done, your Honor please.

"THE COURT: Overruled. It may be proper. The court can't tell at this point. Motion for mistrial also denied.

"MR. DOWLING: Q. What was your answer, what was done with Allen? A. After Robert Allen was brought into the room I asked her if she saw the man that shot her.

"MR. HENNELLY: I object to any hearsay testimony.

"THE COURT: Yes, sustained.

"MR. HENNELLY: I ask the jury be instructed to disregard it and a mistrial be declared, your Honor please.

"THE COURT: Objection will be sustained. Members of the jury, an objection has been sustained to this last answer of the witness as being hearsay. You will disregard that entirely in your deliberations. This is not admissible in evidence. Motion for a mistrial will be denied."

But the circuit attorney persisted in pursuing the matter:

"Q. In what position was she then? A. She was lying on a cot. * * * * Q. Was Allen on either side of Juanita Smith? A. He was right at the foot. * * * * Q. Where was Allen, the defendant, with regard to the position in which Juanita Smith was?

"MR. HENNELLY: I object again, for the reason it would be irrelevant and immaterial, your Honor please.

"MR. DOWLING: I think it is material, your Honor—same room.

"THE COURT: That objection will be overruled.

\* \* \* \*

"MR. DOWLING: Q. In the distance of feet, Officer Shepack, please, how far was Juanita Smith from the place where the defendant was? A. He was standing right at the foot of the table she was lying on - - - cot. Q. Was there any conversation there then other than by you officers? A. None, only when we asked her if she saw the man - -

"MR. HENNELLY: Your Honor, I object, and ask it be stricken, ask counsel be reprimanded and a mistrial be declared.

"THE COURT: The objection will be sustained. It may be stricken. Mistrial will be denied."

During presentation of the testimony of Police Officer Spindler, the circuit attorney, after developing that the witness, with Officer Vaughn, took defendant to the Homer Phillips Hospital to the room where Juanita Smith lay, then asked this question and received this answer: "Q. What then did you do at Homer G. Phillips Hospital with the defendant? A. We had taken him up to the fifth floor, where Juanita Smith had been taken, and where this Juanita Smith identified- -"

An objection was sustained, the jury instructed to disregard the testimony in regard to "identified" and motion for mistrial

denied.  At that time the court, out   **[662]**   of the hearing of the jury, announced to counsel: "It is the court's opinion, however, that this matter, coupled with previous instances in this trial connected with evidence of statements made at the hospital, for which no proper admission foundation has been laid, border on the necessity for declaring a mistrial, and that any further reference to that evidence on the part of counsel for the State or the witnesses would leave the court little choice but to declare a mistrial."

We must assume that the circuit attorney had read the opinion of this court reversing the case because of the prejudicial error therein pointed out.  The record  now before us is devoid of any indication that he expected any change in the testimony.  Hence, we must further assume that, from knowledge gained by him at the first trial, he knew the testimony the police officers would give as to what occurred when defendant was brought to the respective bedsides of Juanita Smith and Garvenia Allen.  We must assume he knew he could not prove by competent evidence any act, conduct or statement on the part of defendant on that occasion that would be of aid to the State's case.  Further, it seems, he also must have known that the only occurrences there, to-wit:  the declaration of each of these women that defendant shot her and that in each instance defendant stood mute, were prejudicial and incompetent.  In such a situation, we can only conclude that he intended to go as far as he possibly could to obtain a conviction, regardless of the rights of defendant.

In the trial of a criminal case, the circuit attorney occupies a quasi-judicial position. While it is his duty vigorously and fearlessly to prosecute in behalf of the State, yet he is also chargeable with the duty to see that the defendant gets a fair trial and he must not knowingly prejudice the right of the defendant to a fair trial by injecting into the case prejudicial and incompetent matters.  State v. Tiedt, 357 Mo. 115, 119-120, 206 S.W. 2d 524, 526-527, and cases therein cited.  In the case of State v. Burns, 286 Mo. 665, 671, 228 S.W. 766, 768, this court, in an analogous situation, described similar conduct of the prosecuting attorney in that case in these words: "We are driven to the inevitable conclusion, from reading the record herein, that the prosecuting attorney proceeded, in respect to above matter, in utter disregard and contempt of our former ruling; that he deliberately and intentionally sought to get before the jury the improper evidence aforesaid, * * *."

In fairness to the learned judge who presided at the trial of this case, it must be said that he did his utmost to erase from the minds of the jurors the prejudicial matters injected into it by counsel for the State.  On at least two occasions he admonished State's counsel that his conduct was approaching a point where a mistrial might become imperative.  The overall prejudicial effect of these matters cannot be fully appreciated until the whole record is studied; it was

creeping and cumulative. In this connection, we note that the motion for new trial was submitted without argument; otherwise, the necessity of this appeal might not have arisen. However, it makes no difference how regular trial proceedings are or how strenuously the trial court may strive to keep them regular or to cure error committed, yet, if prejudice finds its way into the verdict, the verdict cannot stand. State v. Webb, 254 Mo. 414, 434, 162 S.W. 622, 628; State v. Burns, 286 Mo. 665, 671-672, 228 S.W. 766, 769; State v. Tiedt, 357 Mo. 115, 206 S.W. 2d 524.

Undoubtedly, the circuit attorney believed that the objectionable matters above set forth would bolster the obviously weak point in his case, to-wit: the identification of defendant as the slayer of Juanita Smith. He proceeded "on the theory the sting would remain. He cannot find fault if we proceed on the same theory." State v. Webb, supra. When the record is reviewed in its entirety, it shows clearly, we think, that the poison was there—too deeply and repeatedly injected for effective antidote. However guilty any defendant may be, the law of this State requires that he shall be punished only after having [663] been accorded a fair trial. This, we are convinced, the defendant in this case did not have.

Complaint is also made that the instruction on circumstantial evidence (No. 3) erroneously omitted therefrom a phrase that the circumstances in evidence "must be consistent with each other", citing State v. Conway, 348 Mo. 580, 154 S. W. 2d 128. The suggested elements of such an instruction, as set forth in that case, can be embodied in any instruction given on circumstantial evidence in a retrial of this case.

The cause is reversed and remanded. All concur.