**STATE of Missouri, Respondent,**

v.

**Idell McINTOSH, Appellant.**

No. 47007.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

John F. Moeckel, Caruthersville, for appellant.

**54**

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was convicted of the unlawful sale of narcotics and sentenced to two years' imprisonment in the state penitentiary. See Secs. 195.020 (Laws 1953, p. 628) and 195.200 RSMo 1949, V.A.M.S. She has appealed, but has not favored us with a brief. We shall review the assignments of error contained in her motion for a new trial. Supreme Court Rule 28.02. The motion covers some thirty pages of the transcript.

The amended information, filed July 5, 1957, charged the defendant with an unlawful sale of narcotic drugs, to wit: "two one-quarter grain tablets compound, derivative, mixture and preparation of opium" to Shirley Ann Fowler for $10, on May 22, 1957, in Pemiscot County, Missouri. The amended information is quite lengthy and need not be set out herein.

Error is assigned in the motion for new trial on the court's action in overruling defendant's motion to quash "for the reason that the amended information was vague, indefinite and did not charge this defendant with any offense against the laws of the State of Missouri, did not contain the same charge as alleged in the original information, was not the same charge alleged in the affidavit filed in the Magistrate Court, and defendant did not have a preliminary examination on the charge in the amended information as required by law." See Supreme Court Rule 25.06, 42 V.A. M.S. No evidence was offered in support of the allegations which required proof outside of the record.

■ The record shows that, on December 4, 1957, defendant's "court appointed counsel" filed an unverified motion to quash the amended information, but the grounds alleged therein do not correspond to those stated in the motion for a new trial. The motion was based upon some matters not shown by this record, to wit: that this case (No. 7044) was a duplicate of Case No. 7043 and charged a sale on the same day to the same person; that the defendant had been tried and acquitted in Case No. 7043; that defendant had not been arrested in Case No. 7044 when her purported preliminary hearing was held; that the preliminary hearing in Case No. 7044 was held on the same day the complaint was filed; that defendant was denied time to prepare for the hearing in order to accomodate the Federal Narcotics Agent; and that the court had no jurisdiction to try defendant in Case No. 7044, after her acquittal of the sale charged in Case No. 7043. No evidence was offered in support of these allegations and, on January 10, 1958, the motion to quash was taken up, submitted to the court and overruled. In the absence of evidence to support the allegations of the motion, the court did not err in overruling the motion to quash [See State v. Spurlock, Mo.Sup., 312 S.W.2d 843, 845(3)], nevertheless it is our duty on this appeal to determine the sufficiency of the amended information. Supreme Court Rule 28.02. We find the amended information sufficient to fully inform the defendant of the crime charged against her under the then applicable statutes and to meet the tests laid down for determining the sufficiency of an information or indictment. See Sections 195.020 (Laws 1953, p. 628), 195.010(16, 24) [Laws 1953, p. 619], 195.050, 195.080 and 195.200 RSMo 1949, V.A.M.S.; State v. Crawford, Mo.Sup., 251 S.W.2d 76, 77(4); State v. Renkard, 150 Mo.App. 570, 131 S.W. 168.

■ It is alleged that the court erred in overruling defendant's motions for judgment of acquittal tendered at the close of the State's case and at the close of all the evidence. Defendant's motion tendered at the close of the State's case-in-chief was waived when defendant offered evidence in her own behalf. State v. Vincent, Mo.Sup., 321 S.W.2d 439; State v. Richardson, Mo.Sup., 315 S.W.2d 139, 140. The grounds stated in both motions for

acquittal were: (1) that "no valid information charging the defendant with any crime had ever been filed"; (2) that the testimony and evidence against defendant was obtained by an illegally issued and unlawfully executed search warrant; and (3) that the prosecution was "the result of a carefully planned common scheme and conspiracy on the part of a large group of law officers including the prosecuting attorney to trap this defendant into a law violation for the mere purpose of instituting a criminal prosecution against her * * *." The sufficiency of the amended information to charge an offense has already been ruled.

At this time we shall omit the evidence obtained by the State by the use of a search warrant and most of the evidence relied upon to show entrapment (matters subsequently considered) and we shall briefly review the direct evidence tending to show the unlawful sale of narcotic drugs by defendant.

■ Defendant, a married woman, resided with her son and daughter at 410 East Sixth Street in Caruthersville, Pemiscot County, Missouri. On May 22, 1957, Clyde Orton, the Sheriff of Pemiscot County, obtained ten one-dollar bills, copied down their serial numbers on a piece of paper and handed the bills to Ralph Witt, a Federal Narcotics Agent, who picked up Shirley Ann Fowler in a "Government automobile" about 7 p. m., and drove to defendant's home. On the way Witt gave Shirley the ten one-dollar bills. Shirley was 22 years old, a divorcee well known to defendant, but she had been away for about a year. At one time Shirley had used dope, but was not using it at that time or at the time of the trial. She had no dope, narcotics or pills in her possession when Witt came for her. On a previous occasion, "that afternoon," Shirley had introduced Witt to defendant as Ray Garner. Before "that day" Shirley had told defendant she "was coming back that night to buy two pills, but * * *

didn't want Mr. Garner to know it." When Witt and Shirley reached defendant's home about 7:15 p. m., Witt parked the car in front of the house and they both went in and visited with defendant and waited until defendant sent her son and a visitor from the room. Defendant then excused herself and also left the room. Shirley got up and went after defendant into a bedroom and asked her "if she had any morphine pills." Defendant asked Shirley if she had the money and Shirley said, "yes." Defendant then went to another part of the house and Shirley went back to the living room for her purse and money and returned to the bedroom to meet defendant. Shirley arrived first, but defendant presently entered the room and handed Shirley two pills, or tablets, represented to be morphine tablets. They were in a small cardboard box. Shirley opened the box and counted the pills, put the box in her purse and then handed over the ten one-dollar bills to defendant. Defendant counted the money in Shirley's presence. Shirley returned to the living room and put her purse down to advise Witt of the purchase and Witt took possession of the purse and the pills she had obtained. Defendant had not then returned to the living room. When defendant did return, Witt identified himself and placed her under arrest. Thereafter, Witt, a registered pharmacist and a Federal Narcotics Agent, ran "a field test" and identified the two pills or tablets as "quarter grain hypodermic tablets * * * readily soluble and used in solution and administered by hypodermic needle." He testified that the particular two pills, when "field tested," showed the drug to be "an opium derivative" and a narcotic drug, but the witness did not know the particular kind. The pills were then sent for a chemical analysis. James Rhodes, an employee of the State Highway Patrol, whose qualifications as a chemist were admitted, made tests and analyses and testified that the pills contained morphine sulphate, an opium alkaloid and a narcotic drug. None of this evi-

dence was obtained by use of a search warrant and this evidence alone was sufficient to make a case for the jury.

Before proceeding further with the State's evidence, we shall rule other assignments of error concerning the admissibility of evidence and certain related matters.

▮ Prior to the trial the defendant filed a motion to require the State to elect which of three cases pending against defendant the State would try first. This motion was called up on December 17, 1957, and the State elected to try Case No. 7044. At that time motions to quash the amended information, to disqualify the prosecuting attorney and to quash a search warrant and suppress evidence were pending in each of the three cases, and the court advised counsel that any additional motions not filed and ruled by January 8, 1958, would be overruled, as he didn't want "any dilatory motions filed." The motion for new trial says that this was error because it "was in effect ordering the defendant to reveal to the prosecuting attorney what his defense might be on the day of the trial"; and that it "indicated bias and prejudice on the part of the Judge in favor of the State and he should therefore have disqualified himself on his own motion." Defendant made no objection at the time to the time limit fixed by the court and, subsequently, she offered other motions as hereinafter stated. We find nothing in the record to support this assignment of error or the conclusions reached. The assignment is overruled. Supreme Court Rule 25.06.

Defendant's motion to quash the search warrant and suppress evidence (see Supreme Court Rule 33.03) and her motion to disqualify the prosecuting attorney (both motions were filed in all three cases) were heard and considered together. Both motions were overruled, although a 38-caliber revolver taken from defendant by the sheriff at the time of serving the warrant was ordered returned to her. Error is assigned on the court's action in overruling the two mentioned motions. On the hearing on these motions defendant offered the files from the magistrate court in this case showing that the complaint upon which this present prosecution was based was filed on May 23, 1957; and that a warrant was issued and served on defendant on that date, which date was the day following the alleged sale of narcotics.

Other evidence heard on the two motions tended to show that about 11 a. m. on May 22, 1957, Witt and Shirley appeared at the prosecuting attorney's office and that Wanda Harris, the prosecuting attorney's secretary, at his request made a search of Shirley's person and clothing. The evidence shows that she had no money or narcotics about her at that time. The sheriff, who was present with the prosecuting attorney in the office, then gave Shirley five one-dollar bills and she and Witt then proceeded directly to defendant's home. While the record is not entirely clear, apparently these acts preceded Witt's appearance later on the same day before the magistrate to file an affidavit and an application for a search warrant for defendant's premises, all as hereinafter stated. In any case the evidence shows that, prior to Witt and Shirley's visit to defendant's home on the evening of May 22, 1957, Witt appeared before the local magistrate and filed an affidavit against defendant and further testified orally under oath that he was a Federal Narcotics Agent; that on that date he had taken Shirley Fowler to defendant's home and waited outside and sent her in to buy narcotics and she went in and came back with narcotics, "a morphine tablet." The affidavit is not set out in the transcript of the evidence on the hearing of the motions, but the evidence shows that after the filing of the affidavit and the hearing of oral evidence the magistrate issued a warrant for the arrest of the defendant on a criminal charge and further found "probable cause to issue a search warrant" for narcotic drugs and issued it. The written application for the search warrant, the search warrant and the return thereon were

offered and set out in the transcript of the evidence at the trial, but not in the evidence heard on the motions. These documents were not a part of the files in this case, but were a part of the files in Case No. 7043 in the circuit court.

The evidence further shows that on the same day, May 22, 1957, about 7:30 p. m., the sheriff, Clyde Orton, who then had in his possession a warrant for the arrest of defendant and a search warrant for her home, met with E. M. Neeley, the Chief of Police of the City of Caruthersville, a deputy sheriff (Upchurch) and Prosecuting Attorney Vickery and proceeded to a point three-fourths of a block from defendant's home and awaited a prearranged signal from Shirley. When she opened the door of defendant's home to indicate that narcotics had been purchased and the money ($10) paid over to defendant, the sheriff and his company proceeded immediately to defendant's home and the sheriff placed defendant under arrest on the warrant in Case No. 7043 and he read the warrant and the search warrant to her. The sheriff told her, "if she had the stuff" and would turn it over, it would avoid a search and a disarrangement of her house. She denied knowing what he was talking about and a search was made for narcotics. The search warrant said "opium derivatives" and they were looking for "one quarter grain morphine tablets." One bottle containing ten such white pills were found and the ten one-dollar bills were found and recovered.

At this hearing on the two motions the defendant testified that she was defendant in the three cases; that on the evening in question the sheriff handed the warrant to the prosecuting attorney who read the search warrant to her and aided in the search of her house; that "a bottle of tablets of white empirin and codeine" found by the officers belonged to her; and that she had in her possession narcotics, to wit: "one bottle containing ten white tablets of one-quarter grain opium derivative"; that her possession was lawful, since she got them from a drug store with a prescription and paid for them. She got the pills in Portageville. They should have been in her name. Her name "used to be" Wells and Dr. Robinson often made the mistake of using her prior name. Defendant said that Shirley put the money in the drawer; and that her house was searched and the property stated in the sheriff's return was taken from her house before she was arrested. Other witnesses did not recall that the prosecuting attorney did any searching, but he was present and, after defendant's arrest by the sheriff, he told her he had definite evidence she had morphine in her possession; and that it would be better to tell the sheriff where it was located and so avoid having her house disarranged. This was all the evidence offered in support of the motions to quash, suppress evidence and disqualify the prosecuting attorney, but both motions were subsequently refiled and overruled after the prosecuting attorney, on voir dire examination, had made a preliminary statement that "On the night of May 22, 1957, according to a prearranged plan, the Federal Narcotic Agent, working in cooperation with the Sheriff and other officers, went with Shirley Ann Fowler to the home of the defendant. * * * Shirley Ann Fowler had been supplied with some marked one dollar bills * * * the purchase was made of two narcotic pills and, on a signal given, the Sheriff made the arrest of the defendant and searched the house and found the marked money and a bottle of narcotics in the possession of the defendant." This jury panel was subsequently discharged. Defendant relied on these statements as admission to support the two mentioned motions to disqualify the prosecuting attorney and suppress evidence.

Neither the sheriff, nor the prosecuting attorney testified at the hearing on the motions, but in the trial of the cause, the sheriff testified that he had requested the prosecuting attorney to "go along"; and that, after the bottle of narcotic pills was found, the defendant showed him where the ten one-dollar bills were located.

Defendant contends the court erred in overruling the motion to disqualify the prosecuting attorney, because that officer "had expressed an overzeal in prosecuting defendant, had participated in and agreed to a well-planned scheme with the other officers present during the search and seizure at defendant's home"; and that he participated in the arrest and "had violated every rule of fair play and was given an unfair advantage in preparing and presenting the evidence." These assignments do not closely follow the assignments in the motion to disqualify, but the principal contentions are the same.

It is apparent that the prosecuting attorney cooperated with the sheriff, the chief of police of the city and the Federal Narcotics Agent in all preliminary matters to obtain the evidence upon which the last two of the three cases against defendant were based; and that he also accompanied the sheriff, deputy sheriff and the chief of police to defendant's home to serve the warrant for arrest and the search warrant (both based upon the facts in the second case). These warrants were served after the alleged sale had taken place upon which the present or third case is based. It is further apparent from the evidence on the motions that the purpose in serving the warrant in the second case and the search warrant on signal from Shirley and Witt, and immediately after an alleged sale of narcotics, was to obtain additional and corroborative evidence to supplement and support the testimony of Shirley and Witt with reference to the alleged sale of narcotics. The evidence is conflicting as to the extent of participation on the part of the prosecuting attorney and his activities at defendant's house, other than his presence and statement to defendant after the warrants had been read to her, when he suggested that she tell the officers where the narcotics were located and to so avoid a search of her premises.

In view of the trial court's better position to determine the credibility of the witnesses and the weight and value to be given to their testimony and in view of the court's finding on the motions, we shall consider the evidence favorable to the State, which admits the prosecuting attorney's presence when the defendant was arrested and the search warrant served and a search of her premises conducted. The court's finding would indicate the court rejected defendant's evidence as to the activities of the prosecuting attorney and the extent to which he participated in the search of her premises. No evidence was offered to support the charge that the prosecuting attorney had expressed any personal, rather than official, interest in the case or to prove the allegation that he had a deputy sheriff's commission. We must assume that he didn't have such a commission or attempt to act in any such capacity. See State v. Owen, Mo. Sup., 258 S.W.2d 662, 666(6).

As to the prosecuting attorney's presence at the time in question, we must say that we fully concur in the expressed opinion of the Springfield Court of Appeals that a prosecuting attorney should not accompany a sheriff in serving a search warrant in the absence of exceptional circumstances. State v. Nicholson, Mo.App., 7 S.W.2d 375, 377–379. A prosecuting attorney is expected to be zealous in the enforcement of the laws and in the prosecution of law violators, but, at the same time, he must be fair with those who are charged with criminal offenses. It may be difficult at times to decide just where the line should be drawn between that which is proper and that which is improper. In the present case, no fault can be found with the fact that the prosecuting attorney cooperated with the officers in the plan designed to catch the defendant in an unlawful sale of narcotics. His legal advice was apparently needed and it was his duty to advise the officers. See State on inf. of McKittrick v. Graves, 346 Mo. 990, 144 S.W.2d 91, 97 (18, 19). The prosecuting attorney did not appear as a witness in the trial of the case and the evidence is insufficient to show any personal interest in the case comparable

to the showing made in cases where disqualification has been required. State v. Nicholson, supra; State v. Jones, 306 Mo. 437, 268 S.W. 83, 85(1). Also see State v. Allen, 363 Mo. 467, 251 S.W.2d 659, 662 (3-5); State v. Teidt, 357 Mo. 115, 206 S.W.2d 524, 526(1-3); State v. Egan, Mo. App., 272 S.W.2d 719, 726(15-17). The court did not err in overruling the motion to disqualify the prosecuting attorney.

■ Referring now to the motion to quash the search warrant and suppress the evidence obtained thereby, defendant's motion for new trial assigns numerous grounds in support of her contention that the court erred in overruling the motion. She insists that the warrant was issued without proper cause "on the affidavit and testimony of one Ralph Witt," who was not an officer, resident or citizen of Pemiscot County; that the warrant was void on its face for failure to comply with Sections 542.270 and 542.280 (relating to searches for stolen or embezzled property); that the warrant was executed at night contrary to the statute; that it was served by the prosecuting attorney; that all property listed on the return was unlawfully taken; and that the search of defendant's person and property was unreasonable and she was intimidated and deprived of her rights.

The complaint for search warrant was made and filed under Supreme Court Rule 33.01 and Section 195.135 RSMo (Laws 1953, p. 625) V.A.M.S. The "complaint for search warrant," the search warrant and the return were offered by defendant and received in evidence at the trial. They are set out in full in the transcript of the evidence at the trial and we find them sufficient in form and substance. Viewing the evidence in a light favorable to the State, as we must in view of the court's finding, the court did not err in overruling the motion to quash the search warrant and suppress the evidence obtained thereby. Supreme Court Rules 33.01 and 33.02; Section 195.135 RSMo (Laws 1953, p. 625) V.A.M.S. Nothing in this statute or the mentioned rules prohibited a search at the hour mentioned. The evidence sought to be suppressed was properly admitted in evidence at the trial.

Other evidence offered by the State in the trial of the cause to corroborate the testimony of Shirley and Witt hereinbefore set out (much of which corroborative evidence was admitted over defendant's objection that it was obtained by unlawful search) tended to show that during the search of the defendant's premises the sheriff found Exhibit 2, "a bottle of small tablets in a coat pocket in a closet, just off of the living room." He found it without anyone telling him anything. After he found this bottle, he asked defendant if she had the money that had been given to her and where it was. She accompanied him to the east bedroom and in "a chest of drawers setting on the right," she showed him the money, ten one-dollar bills. The serial numbers on these bills corresponded with those taken from the ten bills he had handed to Witt earlier that day. The bills were identified and offered in evidence. The sheriff delivered Exhibit 2, the bottle and contents, to Witt. It contained ten tablets. Witt made a test of the tablets which showed them to be an "opium derivative." He then returned them to the sheriff who sent them to Jefferson City to the Missouri Highway Patrol Laboratory for analysis. The officer (Rhodes) who made the tests returned the tablets to the sheriff. Rhodes found the tablets to be morphine sulphate, a derivative of opium, a narcotic drug. The tablets were of the same substance as the two tablets (hereinbefore mentioned) he had received in another container. Henry Workman, a licensed pharmacist, in the drug business at Portageville, Missouri, identified the State's Exhibit No. 5 as a prescription to Evelyn Woods for morphine sulfate, one-quarter-grain tablets, No. 20. He testified that he had initialed and filled that prescription by putting twenty morphine sulfate one-quarter-grain tablets in the bottle (Exhibit 2); that defendant presented the

prescription and he filled it for her. He delivered the bottle and contents to her and he received $1 from her in payment. It is unnecessary to review the State's evidence further. The defendant testified in her own behalf and denied that on May 22, 1957, she sold two narcotic pills to Shirley Ann Fowler or received ten one-dollar bills from her.

On motion for acquittal tendered at the close of all the evidence we consider the State's evidence as true, disregard defendant's evidence and give the State the benefit of all favorable inferences to be drawn from all the evidence. State v. Richardson, supra, 315 S.W.2d 139, 140; State v. Daegele, Mo.Sup., 302 S.W.2d 20, 23. When so viewed, the evidence hereinbefore reviewed was sufficient to submit the cause and sustain the verdict returned by the jury. The court did not err in refusing to direct a verdict of acquittal for any want of evidence as to defendant's guilt of the offense charged. There remains the issue of entrapment, which is urged in support of the motion for judgment of acquittal.

The evidence does not support defendant's theory that she was trapped into a violation of the law and was therefore entitled to a judgment of acquittal on the ground of entrapment. Nor did the court err in refusing to give an instruction allegedly based on that theory and tendered by defendant. There was no evidence of entrapment and such was not defendant's theory at the trial. State v. Varnon, Mo. Sup., 174 S.W.2d 146, 148(7–8); State v. Sheeler, 320 Mo. 173, 7 S.W.2d 340, 341 (1). Her theory and testimony was that she had not sold narcotic tablets as alleged in the amended information. Her tendered instruction, the refusal of which is assigned as error, was not based on the theory of entrapment. It was based on the theory that she was innocent of the charge against her; that the evidence had been "planted" and defendant "framed" by false testimony. The instruction would

have submitted a finding that by common agreement and design the officers had furnished the ten one-dollar bills to Shirley "for the purpose of concealing said money in * * * the home and premises of defendant * * * and that thereafter * * * said officers were to enter the home * * * and discover said money in its prior arranged place of concealment * * *." The instruction was properly refused and defendant's motion for judgment of acquittal was properly overruled. State v. Sheeler, supra.

The motion for a new trial contains numerous other assignments of error. As previously indicated, no evidence was offered in support of the assignments that have no support in the record. These assignments do not prove themselves and may be disregarded. State v. Gaddy, Mo.Sup., 261 S.W.2d 65, 68(6). Some assignments are so general, indefinite and uncertain as to preserve nothing for review under Supreme Court Rule 27.20. Other assignments sufficient in form are not supported by the record. We have carefully reviewed the record and examined each and every one of the thirty-seven numbered assignments of error set forth in defendant's motion for new trial and we find them without merit. No error warranting a new trial appears.

Under Supreme Court Rule 28.02 we have examined the record for errors not required to be preserved in the motion for new trial. The verdict of the jury is clear, definite and certain, and responsive to the issues, although the word "imprisonment" is omitted after the word "years." The verdict concludes with the words "and assess her punishment at two years in the penitentiary." The omission of the word "imprisonment" is not material. State v. Sanders, Mo.Sup., 313 S.W.2d 658, 660(6). The punishment assessed was within the limits prescribed, since there was no showing of a prior conviction. See Section 195.200 RSMo 1949, V.A.M.S. Allocution was accorded and judgment entered in con-

formity to the verdict. The copy of judgment set out in the transcript does not fully comply with Supreme Court Rule 27.11 in certain respects, but the transcript has been supplemented by a full and true copy of the judgment, as certified by the clerk and the circuit judge. The judgment is in proper form and complies with Supreme Court Rules 27.08, 27.09, 27.10 and 27.11.

The judgment is affirmed.

All concur.