**Anita K. WILLIAMS, et al., Respondents,**

v.

**Sherman KIMES, et al., Appellants.**

**No. SC 82151.**

Supreme Court of Missouri, En Banc.

Aug. 1, 2000.

Rehearing Denied Sept. 12, 2000.

■■■■■■■■■■■■■■■■■

W. Edward Reeves, Caruthersville, for Appellants.

J. Michael Payne, Cape Girardeau, for Respondents.

WILLIAM RAY PRICE, Jr., Chief Justice.

This is the third occasion we have written on this case. Originating as a quiet title lawsuit, we now hold that the purchasers at a void foreclosure sale are entitled to recoup their purchase money with payment secured by an equitable lien on the property. All other issues are barred either by a failure to preserve those issues for appeal or by the doctrine of the law of the case.

## I.

Aubra Robert Wrather's will devised 72 acres to his daughter "Reba Wrather La-Font, and her bodily heirs, in fee simple." While Wrather's estate was being probated, the estate borrowed $97,704.84 from the Farmer's Bank of Portageville ("bank") to pay federal estate taxes. Reba Wrather LaFont and the estate's executor executed a deed of trust covering the 72 acres in favor of the bank. The probate division authorized the bank's encumbrance and, in December 1970, distributed the 72 acres to Reba Wrather LaFont and her bodily heirs subject to the deed of trust.

In 1988, the loan to the estate went into default and the bank foreclosed. At that time, the bank was owed $86,400.00. The executor and LaFont received proper notice of trustee's sale, but the presumptive bodily heirs did not receive such notice. At the 1988 foreclosure sale, the 72 acres was purchased by Sherman D. Kimes, Elaine Kimes, Albert W. Kimes, and Nina Mae Kimes. As a result of the foreclosure

sale, the bank released its lien on the property.

In 1990, the Kimeses conveyed the 72 acres to a family trust. In 1993, LaFont died, leaving two surviving children, Anita Kay Williams and James G. LaFont. Reba Wrather LaFont's third child had passed away in 1986, survived by Heather Maria Hobbs and Lesley Suzanne Hobbs. They sold their interest in the land to Anita Kay Williams and W.A. Williams in 1994.

In *Williams v. Kimes*, 949 S.W.2d 899 (Mo. banc 1997) ("*Williams I* "), this Court considered whether LaFont's presumptive bodily heirs were "owners" under section 443.325.3(2) such that they were entitled to actual notice of the foreclosure sale. We held that as holders of a contingent remainder with an interest capable of conveyance, they were "owners" under section 443.325.3(2). *Id.* at 900. The case was remanded with directions to award the land to the Williamses and for proceedings in accordance with section 527.150.2 regarding the parties' other claims for damages, credits, and other relief. *Id.* at 901.

The circuit court responded to *Williams I* by awarding possession and fee simple title to the Williamses and concluding that the Williamses were entitled to fair market rental value of $100 per acre, per year, starting from Reba Wrather LaFont's death on October 13, 1993, to when the Williamses went into possession in late August of 1997 (total rent value of $28,-800.00). The circuit court further found the Williamses improved the property by grading the land, which increased the value by $13,008.20. The court also found the Williamses would benefit by cotton planted in 1997 prior to the Kimeses leaving the property. The Williamses would realize money from the sale of this cotton in the amount of $2,385.00, after subtracting expenses incurred. Thus, the Williamses' damages in rents was $28,800.00 less the $2,385.00 realized from the cotton sale, offset against the $13,008.20 resulting in a

"net" damage award of $13,406.80 against the Kimeses.

The circuit court "denied [the Kimeses'] request for recoupment of their purchase price and the imposition of an equitable lien in the amount of that purchase price." 996 S.W.2d at 44. This conclusion apparently resulted from language in *Williams I* that "[t]he Kimeses purchased only La-Font's life estate." 949 S.W.2d 901.

The Kimeses appealed from that judgment. In *Williams v. Kimes*, 996 S.W.2d 43 (Mo. banc 1999) ("*Williams II* "), we considered the effect of invalidity of the sale resulting from the insufficient notice. The Kimeses sole point relied on stated:

> The trial court erred in entering judgment in favor of the Williams and against the Kimes on the Kimes' claim for recoupment of their 1988 foreclosure sale purchase price for the subject real estate (together with interest and less a credit for fair rental value of the property) and for the imposition of an equitable lien against the property to secure payment of same because this Court in the initial appeal of this matter invalidated the foreclosure sale as to the Williams' remainder fee interest and parties' to an effective foreclosure sale are entitled to be restored to their status quo ante positions in that the Kimes effectively satisfied an indebtedness of the Williams (and their predecessors in interest) to which the real property would have been subject even if the Williams had received personal notice of the foreclosure sale, and the trial court's failure to allow recoupment of their purchase price by the Kimes resulted in a wind-fall 'gift' of 72–acres of real property to the Williams without payment on their part of either the federal estate tax liability or the bank loan indebtedness associated with the property, which was paid by the Kimes.

The Williamses argued only that the sale was effective to transfer the life estate interest, but did not extinguish the contingent remainder interests. The Williamses did not argue that the bank's lien on the property was not valid.

We stated that "[f]ailure to provide notice of a foreclosure sale to owners of the foreclosed property is a substantial defect sufficient to render the sale void and prevent the transfer of title in the property." *Id.* at 45. Because the foreclosure sale was void and no title passed, the parties must be placed in their ex ante positions. *Id.* at 46. To the extent *Williams I* implied the Kimeses purchased a life estate, *Williams II* clarified that they purchased no title at all, as the sale was void.

The circuit court's response to *Williams II* was to enter substantially the same judgment. The sale was declared void but the Kimeses' request for recoupment of their purchase money secured by an equitable lien was not granted. The circuit court noted that to put the parties back to their ex ante position, the bank needed to be a party to this litigation. The circuit court also entered the same net damage award of $13,406.80 against the Kimeses as it did after *Williams I*.

The Kimeses appeal from that judgment. Their two points argue: 1) they are entitled to a recoupment of the purchase price secured by an equitable lien on the property, and 2) the post–1988 foreclosure sale activities and events should be disregarded, thus eliminating the "net" damage award of $13, 406.80 entered against them.

## II.

### A.

 Now before us for the third time, this case is largely controlled by the doctrine of law of the case:

> The doctrine of law of the case governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case. *State v. Phillips*, 324 S.W.2d 693, 694 (Mo.1959); *State v. Allen*, 363 Mo. 467, 251 S.W.2d 659, 660 (1952). A previous holding is the law of

the case, precluding re-litigation of issues on remand and subsequent appeal. *State v. Graham*, 13 S.W.3d 290, 293 (Mo. banc 2000). The decision of a court is the law of the case for all points presented and decided, as well as all matters that arose before the first adjudication and might have been raised but were not. *Id.; State v. Meyer*, 293 Mo. 108, 238 S.W. 457, 458 (1922). According to the law of the case doctrine, failure to raise points in a prior appeal means that a court later hearing the case need not consider them. *United States v. Kress*, 58 F.3d 370, 373 (8th Cir.1995). Appellate courts have discretion to consider an issue where there is a mistake, a manifest injustice, or an intervening change of law. *Graham*, at 293; *Phillips*, at 694.

*State v. Johnson*, 22 S.W.3d 183, 188–89 (Mo. banc 2000) . We are bound by the facts and holdings from *Williams I* and *Williams II*. The law of this case requires that the parties be placed in their ex ante position. *Williams II*, 996 S.W.2d at 46. "Ex ante" position means the position the parties would be in but for the sale.

## B.

■ The first point relied upon in this appeal is whether the Kimeses are entitled to recoupment of their purchase money secured by an equitable lien on the property. But for the 1988 sale, the Kimeses would not have paid $86,400.00 for what they thought was fee simple title. Nor would the bank's lien on the 72 acre tract of land, eventually passed onto the Williamses, have been extinguished. In order to place the Kimeses in their ex ante position, therefore, on the facts of this case, as between the Kimeses and the Williamses, the Kimeses are entitled to a recoupment of their purchase price money and the imposition of an equitable lien in the amount of $86,400.00 on the 72 acres to secure payment.

The Williamses defend by challenging the underlying indebtedness foreclosed upon in 1988. The Williamses assert that the bank did not have a lien on the property because the 1970 promissory note accompanying the deed of trust was "replaced" with a 1974 note. The deed of trust does not reference this new note. The Williamses argue that their remainder interest was therefore not subject to a lien after 1974.

■ The sole point of error raised in *Williams II*, however, was the Kimeses' attempt to recoup their purchase price money. An equitable lien was sought because the Kimeses' money was used to pay a debt that otherwise would have subjected the Williamses' land to a lien. If there was no valid lien, this could and should have been raised in *Williams II*. No such argument was made. The Williamses have presented no reason why they should be excused from presenting this issue at that time. The doctrine of the law of this case now precludes review of whether the bank's deed of trust validly imposed a lien upon the property because this is an issue which should have been raised, at least, in *Williams II*, but was not.

■ In the proceeding below, the trial court did not order recoupment of the Kimeses' purchase price money secured by an equitable lien because the bank was not a party, even though the bank received the Kimeses' money. The Kimeses' attorney stated after *Williams II* that they would not add the bank as a third party defendant and had no intention of making any claim against the bank in this proceeding. The Williamses then motioned to file a third party petition pursuant to Rule 52.11 [1] to join the bank, but the motion was

1. Rule 52.11 provides in pertinent part:
 (a) When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and petition to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party

denied because the trial court concluded the claims raised belonged to the Kimeses, not the Williamses. The Williamses did not cross-appeal the denial of their motion. Nor did they file a motion below to join the bank as a necessary party or to dismiss the action pursuant to Rule 52.04(a) and (b) in the bank's absence.[2]

In these circumstances the absence of the bank as a party has not been preserved and is waived. The Williamses suffer no injustice by the bank's absence. The bank as a party would merely be required to repay the Kimeses' purchase money and be restored as the lienholder against the 72 acres. The Kimeses would have recouped their money from the bank, but the Williamses' obligation to satisfy the lien would still exist.

■ This is a lawsuit to quiet title between the Williamses and the Kimeses. The bank has expressly acknowledged that it no longer has any interest in the property. During cross-examination of bank president Gary Raney, in the proceeding following *Williams I,* the following testimony was given:

Q. Does Farmer's Bank of Portageville claim a lien on this 72 acre tract today?

A. No, sir.

Q. The loan on that tract was paid off in 1988; wasn't it?

A. Yes, sir.

The court's previous "ex ante" holding does not change this because that ruling was equitable in nature to resolve the respective claims of the Williamses and the Kimeses. Full relief is given between the parties to this suit and no claim is left outstanding. Rule 52.04 is not applicable in that the bank has no interest in the real estate that affects the resolution of this suit.

## C.

■ The Kimeses' second point appealed from alleges trial court error in entering judgment against them in the amount of $13,406.80 because they interpret *Williams II* as holding that all post–1988 foreclosure sale activities and events must be disregarded. The Kimeses did not appeal that portion of the judgment when it was initially entered in *Williams II.* Their sole point relied on in *Williams II* addressed the trial court's failure to impose an equitable lien in their favor. The point

petition not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action.

* * *

(b) When Plaintiff May Bring in Third Party. When a counterclaim is asserted against a plaintiff, he may cause a third-party to be brought in under circumstances which under this rule would entitle a defendant to do so.

2. Rule 52.04(a) and (b) provides in pertinent part:

(a) Persons to be Joined if Feasible. A person shall be joined in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

relied on expressly contemplated that the requested purchase price money would be off-set by the fair market rental value of the property. The Kimeses could have appealed the net damage award in *Williams II*. Because they did not, this issue is also precluded under the doctrine of the law of the case. But for the sale, the Williamses would have had fee simple title and the possession and use of the land upon Reba Wrather Lafont's death in 1993. Instead, the Kimeses wrongfully possessed and used the land for that period of time. The Williamses are entitled to be restored the value of the land for the period of time they were wrongfully deprived of its possession and use on account of the void foreclosure sale.

The Kimeses argue that *Williams II* required that all post-sale events be disregarded, including accounting for any compensation relating to the land's use because *Williams II* reversed and remanded the case "with directions." They reason that the remand "with directions," instead of "for further proceedings," meant that the trial court could not modify, alter, amend, or depart from the mandate. They argue that although the directions were made with primary reference to the purchase price recoupment request, this Court's mandate was not limited to that issue and indeed included the net damage award. Thus, the Kimeses reason because the trial court's judgment was reversed with directions, the trial court could not on remand enter the same net damage award. This argument misses the point.

The "directions" announced in *Williams II* were to "restor[e] the parties to their ex ante position." 996 S.W.2d at 46. *Williams II* did not affect the net damage award. In placing the parties in their ex ante position, use of the land since the sale also must be accounted for, not ignored, to avoid inequity to either party.[3]

---

3. The Kimeses have expressly abandoned any claim for pre-judgment interest accompany-

## III.

The judgment of the trial court is reversed. The case is remanded with directions for a judgment to be entered restoring the parties to their ex ante position by declaring: 1) the 1988 foreclosure sale void; 2) the Williamses as fee simple owners of the 72 acre tract of land described in the petition; 3) damages against the Kimeses and in favor of the Williamses in the amount of $13,406.80 as compensation for the Kimeses' use of the land from Reba Wrather LaFont's death in 1993 until the Williamses entered possession in 1997; 4) the Kimeses are entitled to recoupment of their 1988 purchase price money with payment secured by an equitable lien on the subject real estate (*no personal liability* shall attach to the Williamses); and 5) the amount of damages against the Kimeses shall be increased by the statutory rate of interest from and after the date of the new judgment until satisfied and the amount of the lien also shall be increased correspondingly.

COVINGTON, WHITE and WOLFF, JJ., and SMART, Sp.J., concur.

HOLSTEIN, J., dissents in separate opinion filed: BENTON, J., concurs in opinion of HOLSTEIN, J.; LIMBAUGH, J., not participating.

JOHN C. HOLSTEIN, Judge, dissenting.

I respectfully dissent. The appropriate disposition here is to dismiss the appeal on jurisdictional grounds. The Farmer's Bank (bank), as the mortgagee and beneficiary under a deed of trust, is an indispensable party to this litigation in its present posture. Failure to join an indispensable party deprives the trial court of jurisdiction to enter judgment and, therefore, deprives this Court of jurisdiction to decide the appeal.

This case began, and will end, as a quiet

---

ing the recoupment of the purchase price money.

title suit pursuant to sec. 527.150, RSMo,[1] between the Williamses and the Kimeses. The Williamses' title derived from an estate that executed a note secured by a deed of trust in favor of the bank. As was determined by the first appeal, the Kimeses' title derived from a defective trustee's sale made pursuant to that deed of trust. *Williams v. Kimes*, 949 S.W.2d 899 (Mo. banc 1997) (*Williams I* ). In the second appeal, this Court ordered that the trial court place the parties in their respective "*ex ante*" positions, referring to the respective positions the parties held prior to the void foreclosure sale. *Williams v. Kimes*, 996 S.W.2d 43, 46 (Mo. banc 1999) (*Williams II* ). The effect of this was to void the Kimeses' claim to possession of the real estate and at the same time restore the Williamses' right to possession of the property. Implicit in that determination was that the rights and duties of the bank arising from the void foreclosure sale would be resolved. Of course, the bank was not a party at that point in time.

On remand after the appeals, new issues surfaced. First, the Kimeses claimed a right to an equitable lien in the Williams property based upon the amount they had paid at the bank's foreclosure sale. In response, the Williamses sought to add the bank as a party to resolve the bank's rights and obligations. The trial court refused to allow the bank to be added as a party or grant the lien.[2] Although the issue is not preserved on appeal by the Williamses or the Kimeses, I believe failure to sustain the motion to join the bank as a party is a jurisdictional defect.

Under Rule 52.04(a), a party "shall be joined in the action if . . . in the [party's] absence, complete relief cannot be accorded among those already parties. . . ." One having a direct and immediate interest in the subject matter of litigation and who, if not joined, would have the right to relitigate the question involved in the case is a necessary party. *Buford v. Lucy*, 328 S.W.2d 14, 19 (Mo.1959). The bank is unquestionably interested in and entitled to relitigate issues presented regarding the validity of the sale, the bank's now revitalized deed of trust, and whether the bank has a duty to disgorge the proceeds of an apparently invalid sale. It is a necessary party.

Rule 52.04(a) mandates that a necessary party be joined if feasible. Nothing indicates that it is not feasible to join the bank in this case. The difference between a necessary party and an indispensable party is subtle, but important. An indispensable party is a necessary party who cannot feasibly be joined but whose presence is so essential that in the exercise of equity and good conscience, the action should not be permitted to proceed without joining the absent party. *Rule 52.04(b)*. The majority wholly ignores the analysis required by Rule 52.04. Applying that analysis requires that when this Court ordered that the parties be placed in their respective position *ex ante* the bank's foreclosure sale, the bank became both a necessary and indispensable party in order to resolve its lien under the deed of trust and its obligation to refund the sale proceeds, as well as to quiet title to the premises.

This Court's jurisdiction is derivative. If the trial court lacks jurisdiction, so does this Court lack jurisdiction on appeal. Whether the bank is characterized as either a necessary party or indispensable party, failure to join the bank in this litigation is so fundamental and jurisdictional as to require its consideration *sua sponte* whether raised by the parties on appeal or

1. All references to statutes are to RSMo 1994, unless otherwise noted.

2. Assuming the trial court had jurisdiction to proceed without the bank's presence, the Williamses cannot be faulted for failure to appeal the lack of joinder. Because the trial court's judgment was favorable to the Williamses on the claim for the lien and other issues, the Williamses could not appeal. They were not aggrieved by the judgment. *Sec. 512.020*. The Williamses are only aggrieved by this Court's imposition of a lien based on the Kimeses claim against the bank.

not. *Steiner v. Vatterott*, 973 S.W.2d 191, 194 (Mo.App.1998); *Spellerberg v. Huhn*, 672 S.W.2d 728, 729 (Mo.App.1984); *Shepherd v. Department of Revenue*, 377 S.W.2d 525, 528 (Mo.App.1964), *overruled on other grounds, Jackson v. Director of Revenue, State of Mo.*, 893 S.W.2d 831, 834 (Mo. banc 1995). This is true even though such party is present during the trial and testifies adversely to its own interests or disclaims any interest in the subject matter of the suit. *Polette v. Williams*, 456 S.W.2d 328, 333 (Mo.1970); *Spellerberg v. Huhn*, 672 S.W.2d 728 (Mo.App.1984).

The cases and authorities uniformly identify the mortgagee as a necessary party to a suit to set aside a sale under a deed of trust. Todd, *Missouri Foreclosures of Deeds of Trust* 8 (3d ed.1996) states, "While the trustee is a proper party in a suit involving the deed of trust, she is not a necessary party. The mortgagee is a necessary party, however." A better statement of the rule is that while ordinarily all parties to a transaction or instrument sought to be invalidated should be made parties, this is not true if, "it is obvious that the one not joined has no interest whatever in the subject matter of the suit." *Casper v. Lee*, 362 Mo. 927, 245 S.W.2d 132, 138 (1952) (holding that the trustee under a deed of trust was not a necessary party). The significance of the failure to join the mortgagee in an action to set aside a foreclosure sale was confirmed by *Euge v. Golden*, 657 S.W.2d 689 (Mo.App.1983). That case concluded that failure to join the holder of a note secured by a deed of trust in an action to set aside a trustee's foreclosure under that deed of trust deprived the trial court of jurisdiction. *Id.* at 692.

The majority evades the question of whether the bank is a necessary party. The closest it comes to addressing the question is when it states "The Williams

suffer no injustice by the bank's absence [because the] bank as a party would merely be required to repay the Kimeses' purchase money and be restored as the lienholder against the 72 acres." That is simply not true. By the bank's absence, the Williamses have been denied the right to litigate claims and defenses they may have against the bank on its note and deed of trust. Furthermore, the bank may have claims or defenses against the Kimeses' recoupment claims which remain unlitigated. . The Kimes claim to a lien is dependant upon the validity of their recoupment claim against the bank. In addition, the Williams quiet title action remains unresolved insofar as the bank is concerned. These claims involving the bank's rights and duties were not and could not be decided by the trial court without the bank being a party.[3] The Williamses are prejudiced not only by being denied a determination of those issues by the trial court, but also by being denied any right to appellate review.

The majority asserts that the bank has no interest in the real estate that affects the parties. But the interests of the bank, that is, its rights and duties, create the bridge that the Kimeses must cross to establish any lien on the property. One cannot utter any of the several issues in this case without speaking of rights or duties of the bank toward the parties relating to its note and deed of trust on the subject property and the bank's conduct in the foreclosure process. Those issues demonstrate ample interests by the bank that affect both the real estate and the parties. Because those issues cannot be finally resolved unless the mortgagee is bound by the judgment, the precedent uniformly requires the mortgagee to be made a party to an action to set aside a foreclosure sale.

**3.** Two obvious defenses the bank may have to an equitable recoupment claim brought by the Kimeses are the running of the statute of limitations and the doctrine of laches. Similarly, should the bank bring an action to revitalize its note and lien on the real estate, these same two defenses might be raised by the Williamses.

This Court has ordered that the parties be put in their *ex ante* position regarding foreclosure. That means the bank must be made a party, that its right to a lien on the Williams land be determined and that, absent some now undisclosed defense, the bank should be obliged to return the proceeds of the defective sale to the Kimeses. To bypass the bank and treat the Kimeses as mortgagees of the Williamses' property without eliminating the lien of the bank or insuring a complete refund of the proceeds of the foreclosure sale, will deny the Williamses and Kimeses "complete relief" and leave them subject to "substantial risk of incurring double, multiple or otherwise inconsistent obligations." *Rule 52.04(a).* The bank is a necessary and indispensable party.

The majority fails to follow the cases cited above or the mandatory joinder language of Rule 52.04. The bedrock of our legal system is its reliance upon reasoned precedent and reasoned analogy from precedent. To ignore numerous well-reasoned cases or the plain language of a rule should send a shudder through our courthouses.

This case has gone on too long. I appreciate the majority's effort to end it. But expediency must give way to our firm commitment to well-reasoned precedent and consistently applied rules of procedure. Equally important, the parties are entitled to a full and final determination of their rights and title. Without the joinder of the bank, that is impossible. For failure to join a necessary or indispensable party, where it is clearly feasible to do so, I believe the trial court and this Court lack jurisdiction to proceed. The appeal should be dismissed and final judgment held in abeyance until such time as the bank is made a party and its rights and duties under the deed of trust are fully litigated.